McAndrew v. Donegal Mutual Insurance Co.

2

C.P. of Lackawanna County, no. 99-CV-1761.

*Jill H. Miller* and *Michael R. Mey,* for plaintiff.
*Robert E. Kelly Jr.,* for defendant.

NEALON, *J.,* May 17, 2002—In this first-party bad faith litigation, defendant, Donegal Mutual Insurance Company, has submitted 2,577 documents for an in-camera review to determine whether certain materials are immune from discovery by virtue of the attorney-client privilege and the work product doctrine. Since a bad faith claimant must prove an insurer's state of mind in denying a claim, those documents pertaining to Donegal's bases for denying plaintiff's first-party benefits claim are not protected from discovery under Pa.R.C.P. 4003.3. Additionally, inasmuch as Donegal has asserted an "advice of counsel" defense with respect to certain allegations, it has waived the attorney-client privilege for those documents which relate to its supposed reliance upon its attorney's recommendations in continuing to deny medical expense benefits. However, those records which contain confidential communications or mental impressions concerning the merits of the bad faith claim, pretrial strategy and trial tactics are not subject to discovery. Thus, for the reasons set forth below, plaintiff's motion to compel supplemental discovery responses will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

On April 19, 1997, plaintiff, Lawrence J. McAndrew, was involved in an automobile accident while he was

insured by Donegal under a policy that provided coverage for first-party medical expense benefits. On April 14, 1999, McAndrew instituted this action after Donegal denied payment of medical bills for left shoulder treatment he had received from Eugene Chiavacci, M.D., beginning in October 1997. (See plaintiff's complaint, ¶¶4-9, 14-18.) In his complaint, McAndrew asserts that Donegal breached its insurance contract by failing to pay medical expense benefits even though Dr. Chiavacci related the shoulder treatment to the accident, (*id.,* ¶¶20-27), and he seeks to recover for unpaid bills, statutory interest, counsel fees and costs pursuant to 75 Pa.C.S. §1716. (*Id.,* ¶¶29-35.) McAndrew further avers that Donegal is chargeable with bad faith conduct under 42 Pa.C.S. §8371 for which he demands punitive damages and attorneys' fees. (*Id.,* ¶¶37-39.)

In its original and amended answers, Donegal contends that it is not contractually obligated to pay for any treatment related to McAndrew's left shoulder since he did not injure his shoulder in the accident on April 19, 1997. Specifically, Donegal maintains that McAndrew merely complained of neck and head injuries during his emergency room visits on April 19, 1997, and April 23, 1997, and did not seek medical attention for a shoulder condition until six months after the accident. In addition, Donegal asserts that in the "application for benefits" dated June 13, 1997, which Donegal received on August 12, 1997, McAndrew only identified "head + back injuries" attributable to the accident and did not indicate that he had injured his shoulder. (See defendant's new matter, ¶¶40-43, exhibits A-C; defendant's amended new matter, ¶¶40-42.)

After McAndrew filed a certificate of readiness for a jury trial listing, this matter was eventually scheduled for trial in January 2002. Prior to that time, McAndrew withdrew his breach of contract claim and elected to proceed solely on his bad faith cause of action in a non-jury trial setting.[1] (See plaintiff's supplemental trial brief, pp. 1-3.) On the eve of trial, Donegal's attorney submitted a petition for leave to withdraw as counsel and a request for a continuance of the bench trial which had been scheduled before Judge Vito P. Geroulo, and by orders dated January 14, 2002, Judge Geroulo granted the motion to withdraw as counsel, continued the trial to January 29, 2002, and directed Donegal to reimburse McAndrew for the fees and expenses incurred in preparing for trial on January 14, 2002.

New defense counsel entered his appearance on January 18, 2002, and a non-jury trial commenced on January 29, 2002, at which time testimony was received from Donegal's claim representative, claims supervisor and vice-president of casualty claims. (See transcript of proceedings on 1/29/02, pp. 3-231.) Donegal's representatives testified that based upon their review of the police

---

1. Although both parties demanded a jury trial on the face of their pleadings, see Pa.R.C.P. 1007.1(a), the Superior Court has concluded that a party does not have the right to demand a jury trial in a bad faith case predicated upon 42 Pa.C.S. §8371. See *Mishoe v. Erie Insurance Co.,* 762 A.2d 369, 375-76 (Pa. Super. 2000), *app. granted,* 566 Pa. 666, 782 A.2d 547 (2001). However, if a party files an action asserting breach of an insurance contract and bad faith liability under section 8371, a litigant has the right to a jury trial on the contract claim with the presiding judge subsequently deciding the question of bad faith liability following the jury's verdict on the breach of contract dispute. *Petrecca v. Allstate Ins. Co.,* 797 A.2d 322, 326 (Pa. Super. 2002).

report, McAndrew's emergency room records and application for benefits, the available medical information, and other file materials, Donegal declined to pay any bills for treatment related to McAndrew's left shoulder. (*Id.*, pp. 62-63, 98, 171-72, 182, 184.) Although Donegal's witnesses acknowledged that Donegal had a continuing obligation to investigate and evaluate McAndrew's claim for medical expense benefits even after this litigation was filed, they asserted that they relied upon their legal counsel to apprise Donegal of any significant developments, including the deposition testimony of Dr. Chiavacci, which could affect its original decision to deny payment of shoulder care bills. (*Id.*, pp. 124-25, 133-34, 195-97.)

At the conclusion of the first day of testimony, McAndrew's attorney objected that all relevant documentation had not been produced by Donegal and Judge Geroulo directed counsel to meet to determine whether Donegal's discovery responses had been properly supplemented. (*Id.*, pp. 231-37.) On the following morning, McAndrew moved for a mistrial on the basis that Donegal had not produced all relevant records in its file, and Donegal countered that many of the documents at issue were not discoverable since they contained confidential attorney-client communications or mental impressions concerning the merits of the claim. After hearing the respective arguments of counsel, Judge Geroulo granted the request for a mistrial. (T.P. dated 1/30/02, pp. 4-36, 43, 52.)

In light of Donegal's argument that the materials in question are exempt from discovery based upon the attorney-client privilege and the work product doctrine,

McAndrew's counsel raised concerns regarding Judge Geroulo's ability to review potentially privileged materials and to thereafter serve as the fact-finder during the retrial. (*Id.,* pp. 11-12, 44, 48-49, 51.) Consequently, by order dated March 11, 2002, Donegal was directed to submit to the undersigned for an in-camera review "all records that may arguably be responsive to plaintiff's discovery requests, including a privilege log identifying by page all records which are being produced, together with the bases for the privilege(s) asserted." Donegal was also instructed to serve a copy of the privilege log upon McAndrew's attorneys and both parties were afforded the opportunity to submit legal memoranda by March 22, 2002. The parties have filed their legal briefs and following an in-camera inspection of the documents submitted, this matter is now ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

Discovery is generally allowed with liberality in civil litigation, *Schwab v. Milks,* 8 D.&C.4th 557, 558 (Lacka. Cty. 1990), and any limitations or restrictions upon discovery are narrowly construed. *Horwath v. Brownmiller,* 51 D.&C.4th 33, 39 (Monroe Cty. 2001). All doubts regarding the discoverability of information should be resolved in favor of permitting discovery. *Fitt v. General Motors Corp.,* 13 D.&C.4th 336, 338 (Lacka. Cty. 1992). Furthermore, the party objecting to the production of discovery generally bears the burden of establishing that the information or document sought is not discoverable

and that the objections should be sustained. *Reusswig v. Erie Insurance,* 49 D.&C.4th 338, 341 (Monroe Cty. 2000) (citing *Schwab, supra*); *Hilgert v. Fish,* 8 D.&C.3d 271, 273 (Monroe Cty. 1978).

### (B) *Attorney-Client Privilege/Work Product Doctrine*

Under the Pennsylvania Rules of Civil Procedure, a party may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and "it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact." Pa.R.C.P. 4003.1(a), (c). The attorney-client privilege is codified in the Judicial Code and provides that "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. §5928. Although the language of the statute only addresses communications from the client to the attorney, it has also been extended to safeguard communications from the attorney to the client if their disclosure would reveal confidential communications from the client to the attorney. See *Coregis Ins. Co. v. Law Office of Carole F. Kafrissen,* 186 F. Supp.2d 567, 571-72, 575 (E.D. Pa. 2002). However, the attorney-client privilege does not bar all discovery concerning communications between counsel and a client or a former client. *Panko v. Alessi,* 362 Pa. Super. 384, 389, 524 A.2d 930, 932 (1987); *Lobolito Inc. v. North Pocono School Dist.,* 53

D.&C.4th 347, 350 (Wayne Cty. 2001). Rather, it only bars discovery or testimony regarding *confidential* communications made by the client during the course of the representation. *Birth Center v. St. Paul Companies Inc.,* 727 A.2d 1144, 1164 (Pa. Super. 1999), *aff'd,* 567 Pa. 386, 787 A.2d 376 (2001); *Panko, supra.*

The work product doctrine evolved from the rules of discovery and is currently set forth in Pa.R.C.P. 4003.3 which states:

"Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics."

While the Commonwealth Court has characterized the work product rule's protection of an attorney's mental impressions as "unqualified," see *Sedat Inc. v. Department of Environmental Resources,* 163 Pa. Commw. 29, 33, 641 A.2d 1243, 1245 (1994), the Superior Court has more recently concluded that "[t]he protection of either an attorney's or representative's work product . . . is not absolute." See *Birth Center, supra* at 1165.

The burden of proof which customarily governs discovery disputes (*i.e.,* the objector must demonstrate non-discoverability) does not apply to attorney-client privilege issues. "Because of the importance of the privilege to the administration of justice, the burden of proof is upon the party asserting that the disclosure of information would not violate the attorney-client privilege." *Gould v. City of Aliquippa,* 750 A.2d 934, 937 (Pa. Commw. 2000) (citing *In re Investigating Grand Jury of Philadelphia County,* 527 Pa. 432, 440, 593 A.2d 402, 406 (1991)). With respect to a discovery objection based upon the work product doctrine, it is less clear which party carries the burden of persuasion. Compare *Mesko v. Community Medical Center,* 12 D.&C.3d 741, 745 (Lacka. Cty. 1979) ("It is nearly universally held that the burden of showing that the information sought to be discovered is prohibited by [the work product rule] rests upon the party objecting to such discovery.") and *Holowis v. Philadelphia Elec. Co.,* 38 D.&C.2d 260, 267 (Chester Cty. 1966) ("the burden is upon the party claiming immunity of information . . . to convince the court that the information sought was gathered in anticipation of litigation."), with *Long v. CMC Equipment Rental Inc.,* 70 D.&C.2d 403, 407 (Phila. Cty. 1975) (reasoning that imposing a burden upon the objector to establish that the material is protected work product "would contravene the clear protection of an attorney's work product provided by the rule"). Cf. *LaValle v. Office of General Counsel of Com.,* 564 Pa. 482, 502 n.1, 769 A.2d 449, 461 n.1 (2001) (Nigro, J., concurring) (remarking that the parties seeking discovery "had the burden to show that the

report was both outside the work product privilege . . . and a public record under the [Right to Know] Act."). The very nature of bad faith claims presents more vexing discovery issues for the bench and bar.

(C) *Discovery in Bad Faith Litigation*

42 Pa.C.S. §8371 enables an insured to recover statutory interest, counsel fees and punitive damages against an insurer which "has acted in bad faith toward the insured" in a first-party context. To recover under the bad faith statute, an insured must show by clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *Keefe v. Prudential Property and Casualty Ins. Co.,* 203 F.3d 218, 225 (3d Cir. 2000); *Olsofsky v. Progressive Insurance Co.,* 52 D.&C.4th 449, 459-60 (Lacka. Cty. 2001). Bad faith liability under section 8371 is not restricted to the insurer's actions in originally denying the claim and may include misconduct by the insurer during the pendency of the litigation. *O'Donnell v. Allstate Ins. Co.,* 734 A.2d 901, 906-907 (Pa. Super. 1999); *Ridgeway v. U.S. Life Credit Life Ins. Co.,* 793 A.2d 972, 977 (Pa. Super. 2002) ("The scope of section 8371 has been extended to the investigatory practices of an insurer during litigation initiated by an insured to obtain the proceeds of his or her insurance policy."). Thus, the insured in a bad faith action may be entitled to discovery of documents which were created after the filing of the complaint. *Adams v. Allstate Ins. Co.,* 189 F.R.D. 331, 332 (E.D. Pa. 1999).

To prove insurer bad faith under section 8371, an insured must establish the insurer's actual or ostensible state of mind by demonstrating that it knew or recklessly disregarded its lack of a reasonable basis for denying benefits under the policy. Proof of the insurer's scienter may often involve advice or recommendations by counsel and mental impressions regarding the merit of a claim or defense. The explanatory note to Pa.R.C.P. 4003.3 contemplates this discovery quandary and states:

"The rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

"There are, however, situations under the rule where the legal opinion of an attorney becomes a relevant issue in an action; for example, an action for malicious prosecution or abuse of process where the defense is based on a good faith reliance on a legal opinion of counsel. The opinion becomes a relevant piece of evidence for the defendant, upon which defendant will rely. The opinion, even though it may have been sought in anticipation of possible future litigation, is not protected against discovery. A defendant may not base his defense upon an opinion of counsel and at the same time claim that it is immune from pre-trial disclosure to the plaintiff.

"As to the representatives of a party, and sometimes an attorney, there may be situations where his conclusions or opinions as to the value or merits of a claim, not discoverable in the original litigation, should be discoverable in subsequent litigation. For example, suit is brought against an insurance carrier for unreasonable

refusal to settle, resulting in a judgment against the insured in an amount in excess of the insurance coverage. Here discovery and inspection should be permitted in camera where required to weed out protected material." See explanatory note (1978) to Pa.R.C.P. 4003.3. See also, *Nedrow v. Pennsylvania National Mutual Casualty Insurance Co.,* 31 D.&C.3d 456, 460 (Somerset Cty. 1981) (insurer's file from prior litigation is not exempt from discovery in a bad faith action where the legal opinion of an attorney as to the value or merit of a claim is a relevant issue).

It is somewhat disingenuous for an insurer to maintain that it denied a claim based, in part, upon the advice of legal counsel, but simultaneously oppose an insured's access to documents which may demonstrate the legitimacy, or expose the frivolity, of an "advice of counsel" defense. In *Birth Center v. St. Paul,* the insurer asserted attorney-client privilege and work product doctrine objections with regard to "(1) two letters prepared by St. Paul's counsel analyzing the law of bad faith in lieu of the verdict entered against *Birth Center* in the [liability] case; (2) handwritten notes prepared by St. Paul's liabilities claims supervisor based on his conversation with counsel concerning potential bad faith litigation; and (3) a typewritten note from St. Paul's liabilities claims supervisor setting forth counsel's comments and analysis." *Birth Center,* 727 A.2d at 1164. In holding that the requested documents were discoverable, the Superior Court concluded that "St. Paul waived its right to challenge discovery of these materials on appeal because St. Paul made them relevant to its state of mind at the time it paid the excess verdict." *Id.* at 1166. Accord, *Reusswig,* 49

D.&C.4th 351; *General Refractories Co. v. Fireman's Fund Insurance Co.,* 45 D.&C.4th 159, 169-170 (Phila. Cty. 2000) (holding that where counsel is integrally involved with the denial of the claim or the legal opinion of an attorney is otherwise relevant to the bad faith claim, the attorney's advice or opinions are not shielded from discovery by the work product doctrine).

Similarly, in *Mueller v. Nationwide Mutual Insurance Co.,* 31 D.&C.4th 23 (Allegheny Cty. 1996), Judge R. Stanton Wettick comprehensively analyzed the applicability of the attorney-client privilege and work product rule in bad faith litigation and reasoned:

"An insurance company's defense that it acted in good faith need not be based on communications from counsel; it may be the position of the decision-makers for the insurance company that they were not influenced by any advice that counsel provided.

"I recognize that there will be instances in which an insurance company will contend that it was influenced by the advice of counsel. It may, for example, contend that it acted in good faith because it based its decision on advice of counsel. In this instance, the privilege is deemed to have been waived by the client. A party is not permitted to use the attorney-client privilege as a sword and as a shield. . . . Consequently, if an insurance company is going to raise as a defense to the bad faith claim that it relied upon advice of counsel, the privilege has been waived as to any communications between the insurance company and its counsel regarding the underlying claims upon which the bad faith claim is based. Thus, in these cases Nationwide and Erie cannot raise the attorney-client

privilege unless they state that they will not be contending that advice of counsel was a factor that influenced the manner in which they handled the insured's claims." *Id.,* at 32-33. (citation omitted) See also, *Jones v. Nationwide Insurance Co.,* 2000 WL 1231402, \*\*2-3 (M.D. Pa. 2000) (finding that the insurer waived the attorney-client privilege by asserting affirmative defenses which made its state of mind relevant since that "the advice of counsel is inextricably interwoven into the fabric of the facts that occurred").

Although the concept of waiver based upon an "advice of counsel" defense can be applied with greater ease if the underlying arbitration or litigation has already been concluded, see *e,g., Birth Center, supra,* it is equally applicable in cases where the first-party benefits claim is still pending. See *e.g., Mueller,* 31 D.&C.4th at 28 ("I recognize that . . . I am allowing plaintiff to obtain statements of Nationwide's non-attorney representatives regarding the merit and value of plaintiff's first-party benefit claim, and of strategy and tactics that should be pursued, before the first-party benefit claim is tried.").

### (D) *In-Camera Inspection of Documents*

As reflected in Donegal's "privilege/non-discoverable log," Donegal objects to the production of a host of records on the grounds that they are shielded from discovery by the attorney-client privilege and the work product doctrine set forth in Rule 4003.3. Donegal contends that once suit was instituted, its formerly discoverable claims file "was transformed into a litigation file in which confidential communications with counsel about the law-

suit were placed, in addition to documents containing various conclusions, opinions, notes and summaries, and litigation strategy and tactics developed by Donegal Mutual representatives." (See defendant's memorandum of law, p. 5.) Donegal posits that McAndrew "is precluded from obtaining access to those portions of Donegal Mutual's claim log specifically created during Donegal Mutual's litigation of the present matter." (*Id.* p. 8.) Donegal's argument is devoid of merit with respect to its post-suit conduct relative to McAndrew's medical expense benefits since it had a continuing duty to investigate the first-party benefits claim. See *O'Donnell, supra.* As such, documents generated after the filing of this lawsuit are discoverable to the extent that they concern the reasonableness of Donegal's persistent denial of benefits and do not disclose confidential information regarding the merits of the bad faith claim. See *Adams, supra; Mueller, supra.*

Our in-camera review of the materials submitted indicates that the documents which Donegal seeks to exempt from discovery can be segregated into six categories. The first class of documents relates to transmissions with counsel which simply enclose pleadings, discovery, records, stenographic bills, etc., and do not reveal confidential communications between Donegal and its counsel or mental impressions with respect to the bad faith claim. Since the statutory privilege merely insulates attorney-client correspondence which disclose confidential communications, documents numbers 212A, 230A, 243A, 387A-487A, 505A, 542A-545A, 567A, 629A, 782A-930A, 933A-1000A, 1005A, 1207A, 1916A-1966A, 1968A-1972A, and 1979A- 2017A are discov-

erable. See *Birth Center, supra; Panko, supra.* Included among those discoverable materials are claim log entries reflecting that unidentified telephone messages were left for counsel on his voice mail inasmuch as those notations do not divulge the substance of the telephone message and simply indicate that messages were left. (See 135A-137A, 158A, 160A, 171A-172A, 185A, 200A, 204A-206A.)

The second group of documents are comprised of itemized billing records that were forwarded to Donegal by its counsel for professional services and litigation costs. Attorney billing statements and time records are covered by the attorney-client privilege only to the extent that they reveal litigation strategy and/or the exact nature of services performed. *Fidelity & Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 523 (E.D. Pa. 1996); *Leach v. Quality Health Services,* 162 F.R.D. 499, 501-502 (E.D. Pa. 1995). "[S]tatements and records that simply reveal the amount of time spent, the amount billed, and the type of fee arrangement between attorney and client are fully subject to discovery." *U.S. v. Keystone Sanitation Co. Inc.,* 885 F. Supp. 627, 675 (M.D. Pa. 1994). Since the billing records in this case do not disclose strategy or otherwise divulge work product or confidential information, they are discoverable and Donegal will be required to produce those documents numbered as 251A, 257A-277A and 546A-551A.

The third type of record is a single page document reflecting the loss reserve that Donegal placed on McAndrew's first-party benefits claim. See Sukel & Pipkin, *Discovery and Admissibility of Reserves,* 34 Tort & Ins. L.J. 191, 220 & n.14, 19-20 (Fall 1998). At least

one Pennsylvania court has prohibited discovery of an insurer's reserves on the basis that such information is not relevant in a bad faith action. See *Ciccone v. Allstate Insurance Co.,* 49 D.&C.4th 505, 510 (Monroe Cty. 2000) (Wallach Miller, J.). Other courts have concluded that loss reserve records are relevant in a bad faith action in which an insured maintains that the insurer failed to properly handle or appraise a claim. See *Cantor v. Equitable Life Assurance Society,* 1998 WL 306208, *2 (E.D. Pa. 1998); *North River Ins. Co. v. Greater NY Mut. Ins. Co.,* 872 F. Supp. 1411, 1412 (E.D. Pa. 1995). Our esteemed colleague Judge Wettick has compelled an insurer in a bad faith action to produce documentation describing the procedures by which the insurer established its loss reserves and has concluded that such reserve information may be pertinent to the issue of whether the insurer neglected to make a reasonable settlement offer. See *Fretz v. Mutual Benefit Ins. Co.,* 37 D.&C.4th 173, 179-80 (Allegheny Cty. 1998). Since the amount of the loss reserve established for McAndrew's first party benefits claim may arguably reflect that Donegal failed to properly investigate and evaluate the severity of his accident-related injuries, or refused to honor his shoulder treatment bills for an ulterior purpose (*i.e.* due, to an inadequate reserve for medical bills), the reserve is relevant to the purported basis for denial and Donegal will be ordered to produce document number 249A.

The fourth category of exhibits relates to Donegal's processing of McAndrew's medical bills and application for benefits and its ongoing investigation of his now-abandoned first-party benefits claim. Some of these materials relate to Donegal's discussions with McAn-

drew's workers' compensation carrier, an insurance agent (Sandor Zangardi) and other parties regarding Mc-Andrew's medical and employment histories. These particular documents are pertinent to Donegal's continuing evaluation of McAndrew's claim and its corresponding justification for denial. It is conceivable that these records could be used to demonstrate that Donegal did not have a legitimate basis for denying McAndrew's claim in the first instance and engaged in a post-suit fishing expedition in an effort to manufacture reasonable grounds for rejecting the medical expense claim. Therefore, documents 180A-189A 207A, 232A-237A, 320A-322A, 330A-336A, 358A-359A 368A-383A, 526A-531A, and 584A-585A are discoverable in that they relate to Donegal's state of mind and do not include confidential attorney-client communications.

In addition to arguing that Dr. Chiavacci's bills should have been honored initially inasmuch as he related McAndrew's shoulder condition to the accident in the original attending physician's report that was submitted to Donegal, McAndrew maintains that Donegal was unquestionably obligated to pay those bills once Dr. Chiavacci was deposed in this case and confirmed the requisite causal connection. Donegal's representatives have responded to that charge by asserting that they relied upon their counsel to inform Donegal of any relevant developments, such as the deposition testimony of Dr. Chiavacci, which could have impacted upon Donegal's decision to deny benefits. (See T.P. 1/29/02, pp. 124-25, 133-34, 195-97.) The fifth classification of records concerns Dr. Chiavacci's deposition and the report that Donegal's counsel submitted to it following the

completion of that medical deposition. Since Donegal has affirmatively asserted an "advice of counsel" defense with respect to Dr. Chiavacci's deposition, it has waived any attorney-client/work product protection that may have formerly immunized those materials and Donegal will be required to produce documents 498A-501A, 571A-574A and 2130A-2131A. See *Birth Center, supra; Mueller, supra.*

The final genre of documents consists of internal memoranda, attorney-client correspondence and other records concerning discovery issues, deposition summaries, settlement discussions, court rulings and conferences, legal research, and pre-trial and trial strategy distinctly related to the merits of the bad faith claim. Unlike the fourth category of records which exclusively address McAndrew's medical expense claim and Donegal's denial of the same, the final group of documents contains confidential information and mental impressions regarding the viability of the bad faith allegations under 42 Pa.C.S. §8371. Consequently, documents 138A-151A, 153A, 157A, 161A-170A, 173A- 179A, 190A, 192A-199A, 201A-203A, 208A-209A, 214A-216A, 227A-228A, 231A, 239A-241A, 252A- 256A, 278A-304A, 324A-329A, 337A-340A, 343A- 357A, 360A-367A, 384A-386A, 510A-523A, 532A- 537A, 556A-564A, 570A, 575A-577A, 582A-583A, 591A-592A, 599A-604A, 607A-614A, 622A-628A, 638A-650A, 655A-677A, 681A-685A, 688A-781A, 931A-932A, 1724A-1805A, 1967A, and 1973A-1979A are not subject to discovery and McAndrew's motion to compel production of those records will be denied.

ORDER

And now, May 17, 2002, upon consideration of plaintiff's motion to compel supplemental discovery responses, defendant's objections thereto, the memoranda of law filed by the parties, and the in-camera review of the documents submitted, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Plaintiff's motion to compel supplemental discovery responses is granted in part and denied in part;

(2) Plaintiff's motion to compel is denied with respect to those documents which have been numbered as 138A-151A, 153A, 157A, 161A-170A, 173A-179A, 190A, 192A-199A, 201A-203A, 208A-209A, 214A-216A, 227A-228A, 231A, 239A-241A, 252A-256A, 278A-304A, 324A-329A, 337A-340A, 343A-357A, 360A-367A, 384A-386A, 510A-523A, 532A-537A, 556A-564A, 570A, 575A-577A, 582A-583A, 591A-592A, 599A-604A, 607A-614A, 622A-628A, 638A-650A, 655A-677A, 681A-685A, 688A-781A, 931A-932A, 1724A-1805A, 1967A, and 1973A-1979A, and defendant is not required to produce those materials;

(3) Plaintiff's motion to compel is granted with respect to the remaining documents which have been identified in defendant's "privilege/non-discoverable log," and defendant's objections to the production of those records are overruled; and

(4) Within 10 days of the date of this order, defendant shall produce for inspection by plaintiff and his counsel all documents which have not been identified in paragraph 1 of this order as being protected from discovery.