NEALON, J.,
ORDER
Plaintiff, Kevin Bandru (“Bandru”), has filed a de novo appeal of the special trial master’s order dated January 8, 2015, granting the motion of defendant, Rose Fawzen (“Fawzen”), to strike Bandru’s objections to records subpoenas that Fawzen has addressed to Bandru’s health care providers and two automobile insurers. The instant discovery appeal involves the proper balance between *3 the liberal allowance of broad discovery in civil litigation and the proscription against overly expansive “fishing expeditions” into matters of dubious relevance. The parties have filed their respective memoranda of law, and following the completion of oral argument on February 24, 2015, Bandru’s appeal was submitted for a decision.
Bandru and Fawzen were involved in an automobile accident on September 1, 2012, at the intersection of Boulevard Avenue and East Market Street in Scranton. (Docket Entry No. 1 at ¶¶ 5-6; Docket Entry No. 5 at ¶¶ 5-6). Bandru contends that as a result of the accident, which was caused by Fawzen’s failure to stop at a red traffic light, he has suffered “a closed head injury, neck pain, jaw pain, clicking sensation in the jaw, headache, concussion, post-concussive syndrome, vertigo, unsteadiness, disorientation, myofascial pain syndrome, cervical strain, cerebral contusion, cochlea injury, tinnitus, memory loss, acute TMD (temperomandibular joint dysfunction), thoracalgia, post-traumatic vision disorder, and shock to his nerves and nervous system, all of which caused him, continue to cause him and will/may cause him for an indefinite time in the future great pain, agony and suffering, both physical and mental.” (Docket Entry No. 1 at ¶7). Bandru seeks to recover damages for past and future economic and non-economic losses. {Id. at ¶¶ 8-12).
Pursuant to Pa.R.C.P. 4009.21 and 4009.24, Fawzen served notice of her intent to subpoena Bandru’s records from the Veterans Affairs Medical Center, Matthew Berger, M.D., Lisa Starr, M.A., Geisinger Community Medical Center, and White Crossings Medical Group, and in response, Bandru filed objections to those subpoenas *4 under Pa.R.C.P. 4009.21(c).[1] (Docket Entry Nos. 22-37). The gravamen of Bandru’s objections is that Fawzen seeks records “going back to [Bandru’s] date of birth more than 52 years ago,” and that the records requests are “overly broad” and seek “information that is not relevant and is not likely to lead to the discovery of admissible evidence.” (Id. at p. 1). Bandru further asserts that he does not object to certain subpoenas which are “reasonably limited in time and scope.” (Id.).
After Fawzen subsequently furnished notice of her intention to subpoena records from Dr. Gregory E. Cali, Dr. Darlene Dunay, Carl W. O’Hara, D.C., Dr. W. Timothy Ward of the University of Pittsburgh Orthopedic Surgery Department, The Wound Institute Research Center, William F. Dougherty, Nationwide Insurance Company, and CNA Insurance Company, Bandru filed additional objections pursuant to Rule 4009.21(c) raising objections that are identical to his earlier objections. (Docket Entry Nos. 41-53). On January 8, 2015, Fawzen presented a “Motion to Strike plaintiff’s objections to subpoenas” to the Special Trial Master in accordance with Lacka. Co. R.C.P. 4000.1.[2] (Docket Entry No. 57). Fawzen alleged in her motion that Bandru testified during his discovery deposition “that he had extensive dental work done at the VA Hospital in the mid-1980s,” “that he was injured in previous motor vehicle accidents,” “that he treated for *5 his injuries from the previous accidents at CMC (now known as Geisinger CMC),” and “that he treated with Dr. Salko of Whites Crossing Medical Group and that he could not recall whether or not he treated with Dr. William Dougherty.” (Id. at ¶¶ 16-19). Fawzen further averred that in Bandru’s interrogatory answers, he “stated that he had seen Drs. Starr, Berger, Salko and Dougherty.” (Id. at ¶ 20). In support of her discovery motion, Fawzen argued that she “is entitled to retrieve and receive documentation relative to [Bandru’s] past medical history and any and all documents pertaining to [Bandru’s] past medical care and treatment to ascertain whether any of the injuries alleged by [Bandru] existed prior to the accident and/or whether [Bandru] was involved in any prior accidents, incidents, etc. in which he sustained personal injuries.” (Id at ¶ 21).
Bandru maintains that “[ajlthough the Special Trial Master agreed that the subpoenas were too broad and needed to be limited in scope, he granted [Fawzen’s] Motion which allows the subpoenas to be served without any restrictions on the information sought.” (Docket Entry No. 61 at p. 3). Bandru acknowledges that he was involved in prior automobile accidents in 1991, 1993 and 1998 in which he sustained a concussion and injuries to his low back, shoulder and knees, but asserts that “[f]or years before this collision, [he] was a personal trainer and ran multiple marathons (and ultra marathons of greater than fifty miles) every year.” (Id. at pp. 1-2,4). According to Bandru, in response to Fawzen’s discovery seeking the identity of all health care providers who have ever treated him during his lifetime, “[h]e identified treatment he received when in the military in 1985 or 1986 for a colon infection, appendicitis and dental work,” as well as “a psychiatrist and psychologist he treated with about *6 15 years ago for anxiety and depression.” {Id. at p. 2). Bandru argues that “[t]he fact that [he] received dental treatment while in the military 30 years ago has no bearing on his traumatically induced jaw injury from the current collision,” and that “[tjreating for anxiety and depression 15 years ago has no bearing on the current issues.” {Id. at p. 4). Bandru posits that Fawzen’s requests for those medical records and the files of the automobile insurers relative to his 1991,1993 and 1998 accidents are “nothing more than a fishing expedition to try to dig up some ancient record which could be used to distract and misdirect a jury from the issues in this case.” {Id.).
In her opposing brief, Fawzen submits that she has learned through Bandru’s discovery responses that he injured his arm in the 1991 accident, his shoulder in the 1993 accident, and his head in the 1998 accident, which resulted in post-concussion syndrome that caused him to experience “dizziness, memory loss, depression and anxiety.” (Docket Entry No. 63 at p. 3). Fawzen asserts that she is entitled to obtain “the records of [Bandru’s] automobile insurer, Nationwide Insurance Company, pertaining to [his] prior motor vehicle accidents” since Bandru “has placed all of his claimed injuries at issue regarding their origin, extent, duration and impact.” {Id. at pp. 2-3). She further avers that (a) the VA Hospital’s records concerning Bandru’s dental treatment “while in the United States Air Force in the 1980s” could be relevant to his current “claim of jaw pain,” (b) his “past history of pleurisy would be instructive in trial preparation,” and (c) other records in her counsel’s possession reflect that Bandru treated with Dr. Gregory Salko of Whites Crossing Medical Group “as late as 2002 offering a history of concussion, fatigue, malaise, headache, insomnia and *7 hearing loss, all which overlay the injuries presently claimed.” (Id. at p. 4). Based upon that reasoning, Fawzen contends that “[t]he materials sought are highly relevant on their face and must be produced in their entirety without regard to any arbitrary time limitations.” (Id. at p. 2).
Discovery Standard
Under Pa.R.C.P. 4003.1, “discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried.” Berg v. Nationwide Mutual Insurance Company, Inc., 44 A.3d 1164, 1178 n.8 (Pa. Super. 2012), app. denied, 619 Pa. 719, 65 A.3d 412 (2013). Information is relevant “if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.” Klein v. Aronchick, 85 A.3d 487,498 (Pa. Super. 2014). In the context of discovery, the term “relevant” has greater breadth and flexibility than it does for purposes of admissibility at trial. George v. Schirra, 814 A.2d202, 205-206 (Pa. Super. 2002); Yadouga v. Cruciani, 66 Pa. D. & C. 4th 164, 167 (Lacka. Co. 2004). Any doubts regarding relevancy should be resolved in favor of allowing discovery. Ario v. Deloitte & Touche LLP, 934 A.2d 1290, 1293 (Pa. Cmwlth. 2007); McAndrew v. Donegal Mutual Insurance Company, 56 Pa. D. & C. 4th 1,7 (Lacka. Co. 2002).
“The trial court is responsible for overseeing discovery between the parties and therefore it is within that court’s discretion to determine the appropriate measures to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure.” Rome and Haas Company v. Lin, 992 A.2d 132, 143 (Pa. Super. 2010), cert. denied, 132 S. Ct. 852 (U.S. 2011). Although discovery should be liberally allowed, “[djiscovery requests must also be *8 reasonable” and “a court can prohibit the discovery of matters which...would amount to a ‘fishing expedition.’” Koken v. One Beacon Insurance Co., 911 A.2d 1021, 1025 (Pa. Cmwlth. 2006); Sharp v. Travelers Personal Security Insurance Co., 2014 WL 926268, at *10 (Lacka. Co. 2014). As we have previously noted, “[wjhile a limited degree of ‘fishing’ is to be expected with certain discovery requests, parties are not permitted ‘to fish with a net rather than with a hook or a harpoon.’” Brogan v. Rosenn, Jenkins & Greenwald, LLP, 2013 WL 1742689, at *8 (Lacka. Co. 2013) (quoting Brownstein v. Philadelphia Transp. Co., 46 Pa. D. & C. 2d, 463,464 (Phila. Co. 1969)). Furthermore, the discovery rules demand that a party seeking the production of documents must describe the requested materials “with reasonable particularity.” Id. at *7-8 (plaintiff’s request for deponent’s Facebook username and password for “carte blanche access to her private social networking information” was “not properly tailored ‘with reasonable particularity’ as required by the Pennsylvania Rules of Civil Procedure.”).
Evidentiary Record
Fawzen has submitted Bandru’s answers to four interrogatories and six pages from Bandru’s four hour deposition in support of her argument that the records at issue are relevant and discoverable. In response to Fawzen’s interrogatory nos. 30 and 31 requesting the identities of “all physicians who have treated you for any reason” and “all hospital or other health care institutions at which you sought or received treatment for any reason whatsoever,” Bandru listed ten physicians and seven hospitals from whom or at which he received treatment for asthma, pleurisy, microischemia, a concussion, and problems with his left shoulder, knees, and left ankle. *9 (Docket Entry No. 63, Exhibit I at pp. 2,7). Bandra identified sixteen other physicians, including W. Timothy Ward, M.D., of the Department of Orthopaedic Surgery at the University of Pittsburgh School of Medicine, a psychologist, Dr. William F. Dougherty, Psy. D., a chiropractor, Kimberly Krisiak, D.C., and an acupuncturist, Holly Rabbe, L.Ac., who have treated him for his accident-related injuries, which he described as “post-concussion syndrome, constant headaches, balance deficits, vision problems (photophobia, confused vision), noise and social overstimulation triggers from concussion that leave me susceptible to migraine symptoms, tinnitus, TMJD jaw pain and dysfunction, neck pain which creates spasms and constant pain cycle.” (Id. at pp. 3,8). In reply to Fawzen’s interrogatory no. 51, Bandra also confirmed that he injured his low back in an auto accident in October 1991, his shoulder in an accident in September 1993, and both knees in an accident in September 1998 in which he also suffered a concussion. {Id. at pp. 4, 9).
During his discovery deposition, Bandra testified that in 1985 or 1986, he had “some dental work done” and received treatment for “appendicitis” and “a colon infection” at the VA Medical Center “while [he] was in the Air Force.” (Docket Entry No. 63, Exhibit H at p. 16). Bandra indicated that prior to the subject accident on September 1, 2012, he had been hospitalized for “knee surgeries,” “appendicitis in 1986,” “a virus back in 1999,” “pleurisy a few years ago,” and injuries sustained in the 1998 accident. (Id. atp. 144). Last, according to the limited portions of Bandra’s discovery deposition that have been filed of record, Bandra was also treated at the CMC for a concussion that he received in the 1998 accident. (Id. at p. 147).
*10 Fawzen’s notices dated August 4, 2014, pursuant to Pa.R.C.P. 4009.24 indicate her intention to subpoena the records of Dr. Matthew Berger, Lisa Starr, M.A., and Whites Crossing Medical Group, and the “medical records,” “patient billing” and “radiology file” of Geisinger Community Medical Center (CMC) and the Veterans Affairs Medical Center. (Docket Entry No. 63, Exhibit B atpp. 5-8, 11-16, 23-26, 33-40). The subpoenas directed to those healthcare providers and entities do not contain any temporal limitations with respect to the records being sought. (Id.). Moreover, the addenda attached to the subpoenas direct the records custodians to produce “any and all medical records, billing records and films, reports, office notes, progress reports, doctor[’]s notes, charts, summaries, test results, lab tests, evaluations, etc., pertaining to Kevin Bandru.” (Id. at pp. 12, 14, 16, 24, 26, 34, 36, 38, 40).
On August 8,2014, Fawzen served notices of her intent to serve subpoenas upon Nationwide Insurance Company for copies of its claims files, including any “application for benefits, medical records, billing records, payout sheets, claims notes, etc.” with regard to Bandru for dates of loss on September 18, 1993, September 29, 1998, and February 12, 2008. (Docket Entry No. 63, Exhibit D at pp. 1-11). Fawzen sought comparable records from CNA Insurance Company which was the tortfeasor’s liability insurer for the accident on September 18, 1993. (Id. at pp. 12-13). On August 28, 2014, Fawzen provided notice under Rule 4009.24 of her intention to subpoena the medical records of Dr. Darlene Dunay, Dr. Gregory E. Cali, Dr. W. Timothy Ward and the University of Pittsburgh Orthopedic Surgery Department, The Wound Institute Research Center and Dr. William F. Dougherty, *11 the chiropractic records of Carl W. O’Hara, D.C., and additional records from Nationwide Insurance Company. (Docket Entry No. 63, Exhibit F at pp. 1-36). As with Fawzen’s earlier subpoenas, the proposed subpoenas for the hospital and medical records do not contain any temporal limitation or subject matter restriction. (Id. at pp. 10, 12, 14, 16, 18, 22). The subpoenas to be served upon Nationwide Insurance Company identify the relevant dates of loss as November 8, 2004, November 14, 2004, February 2, 2007, August 9, 2007, June 4, 2010, January 16, 2013, and March 14, 2013. (Id. at pp. 20, 24, 26, 28, 30, 32, 34, 36).
Records Concerning Head, Neck, Jaw and Vision Treatment
Under Pa.R.C.R 4003.1 (b), information is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. See Cooper v. Schoffstall, 588 Pa. 505, 522, 905 A.2d 482, 493 (2006). Evidence of prior medical complaints are admissible into evidence provided that they are properly “connected to the complaints at issue.” Odato v. Fallen, 848 A.2d 964, 966 (Pa. Super. 2004) (“Since the previous medical complaints of left-shoulder pain were connected to the medical complaint at issue, we find the evidence relevant, and we further find no abuse of discretion or error of law committed by the trial court in denying the [plaintiffs’] motion in limine''), app. denied, 580 Pa. 698, 860 A.2d 124 (2004); Moritz v. Horace Mann Property & Casualty Ins. Co., 2014 WL 5784150, at *3-4 (Lacka. Co. 2014) (because plaintiff did not allege any injury to her hip or a traumatic aggravation of her pre-existing hip condition, evidence of her lifelong hip problems was inadmissible). Similarly, evidence of prior accidents may be admissible if the injury suffered *12 in the earlier accident is connected to the injuries alleged in the pending suit. See Valentine v. Acme Markets. Inc., 455 Pa. Super. 256, 261-262,687 A.2d 1157, 1160 (1997) (trial court erred by allowing evidence of plaintiff’s two prior falls since “[tjhere is also no testimony that [plaintiff] suffered injuries in his two prior falls that are similar to the injuries he suffered in this fall.”); Bodnar v. Mesko, 26 Pa. D. & C. 5th 85, 93 (Lacka. Co. 2012) (precluding evidence of plaintiff’s prior slip and fall incident and automobile accident on the grounds that such evidence “is not properly ‘connected to the complaints at issue’ and must therefore be precluded ‘as irrelevant and prejudicial.’” (quoting Odato, supra)).
As one trial court has aptly observed, “[tjhere can be no question that some part of the plaintiff’s extensive medical history may be of substantial relevance to the issue at hand,” but “[ijn the same light, however, there can also be no question that some parts of the plaintiff’s medical history may be not only irrelevant to the present action but also of a highly private and personal nature.” Slayton v. Biebel, 37 Pa. D. & C. 4th 140, 144 (Crawford Co. 1998). For Bandru’s pre-and post-accident treatment records to be discoverable, they must be reasonably calculated to lead to the discovery of information bearing a connective relevance to the injuries being claimed in this lawsuit. Inasmuch as Bandru has identified Dr. W. Timothy Ward of the University of Pittsburgh School of Medicine and Dr. William F. Dougherty as health care providers who “treated [him] for injuries allegedly resulting from this accident,” their records are clearly discoverable. In addition to those records, and the records of Dr. Tiffany Griffiths, The Hospital for Special Surgery, Northeast Eye Institute and Sears Optical, (see n. 1, supra), Fawzen is also *13 entitled to subpoena the records of Geisinger Community Medical Center from September 29, 1998, to the present since (a) the discovery record reflects that he received treatment there for a concussion that he sustained in an earlier accident on September 29, 1998, and (b) Bandru claims to have suffered a concussion and post-concussive syndrome in the subject accident. Furthermore, inasmuch as the existing discovery record indicates that Bandru also received pre-accident treatment from Dr. Gregory Sálico and Whites Crossing Medical Group for a concussion and headache symptoms, those records are likewise discoverable.
However, Bandru’s past medical records concerning treatment for asthma, pleurisy, microischemia, appendicitis, a virus, a colon infection, “some dental work,” and injuries to his knees and left ankle have no conceivable relevance to the injuries at issue in this litigation. The record submitted for our review is devoid of any indication as to what conditions were treated during which periods of time by Dr. Dunay, Dr. Cali, Dr. O’Hara, and The Wound Institute Research Center. Absent some basis to find that the medical conditions which were treated by those health care providers are possibly “connected to” the complaints or injuries in dispute in this matter, their records are not reasonably calculated to lead to the discovery of admissible evidence. If the medical and insurance records subpoenaed by Fawzen indicate that Bandru did receive pre-accident treatment from those health care providers for head, neck, jaw, or vision symptoms, Fawzen may revisit her request to obtain those records.
The records of Nationwide Insurance Company pertaining to the 1998 accident, in which Bandru sustained a head injury, are also subject to discovery. Although *14 Bandru contends that the insurance records relating to his 1993 accident are not discoverable since he only experienced shoulder pain from that earlier accident, it is conceivable that shoulder symptoms may be attributable to a cervical condition that causes radicular pain which radiates into the shoulder. See, e.g., Cytemp Specialty Steel v. WCAB (Crisman), 39 A.3d 1028, 1032 (Pa. Cmwlth. 2012) (treating physician diagnosed work injury as “cervical radiculopathy causing pain to radiate into Claimant’s shoulder.”), app. denied, 616 Pa.660, 50 A.3d 127 (2002); Long v. WCAB (Integrated Health Service. Inc.), 852 A.2d 424, 426 (Pa. Cmwlth. 2004) (physician testified that claimant complained of “neck pain radiating into her right shoulder.”). As a result, prior complaints of shoulder symptoms may be “connected to the complaints at issue” involving Bandru’s neck.
Therefore, the records of Nationwide Insurance Company and CNA Insurance Company concerning the 1993 accident are reasonably calculated to lead to the potential discovery of admissible evidence. The same cannot be said for Nationwide Insurance Company’s records relative to the 1991 accident since Bandru injured his arm in that accident, but has not alleged any injury to his arm in this litigation. Moreover, assuming arguendo that the dates of loss reflected on the additional subpoenas to Nationwide Insurance Company are not typographical errors, there is no indication whatsoever in the evidentiary record of the putative relevance of alleged accidents on November 8, 2004, November 14, 2004, February 2, 2007, August 9, 2007, February 12, 2008, June 4, 2010, January 16, 2013, and March 14,2013.
“Open-ended, undefined discovery demands are not self-proving.” Young v. Western Pennsylvania Hospital, *15 722 A.2d 153, 156 (Pa. Super. 1998). Unless the records being sought by Fawzen have some possible relevance to the injuries or claims being contested in this personal injury accident, Fawzen’s quest for those records is tantamount to an impermissible “fishing expedition.” See Papa v. Pittsburgh Penn-Center Corp., 421 Pa. 228, 218 A.2d 783, 789 (1966) (“Testimony concerning any prior fall was not admissible for any purpose unless the injuries from that alleged accident could be connected to those claimed in the present suit, so as to raise the inference of a pre-existing condition.”). Consequently, Bandru’s discovery appeal will be granted and his objections sustained to the subpoenas served upon the Veterans Affairs Medical Center, Dr. Gregory E. Cali, Dr. Darlene Dunay, Dr. Carl W. O’Hara, D.C., and The Wound Institute Research Center, without prejudice to Fawzen’s right to later seek to discover those records upon establishing their potential connective relevance. Bandru’s objections will be overruled with respect to the subpoenas directed to Dr. W. Timothy Ward of the University of Pittsburgh School of Medicine, Dr. William F. Dougherty, Dr. Gregory Salko and Whites Crossing Medical Group, as well as Geisinger Medical Center for treatment related to Bandru’s accident on September 29, 1998, Nationwide Insurance Company for records relative to Bandru’s claims stemming from that 1998 accident, and CNA Insurance Company and Nationwide Insurance Company for records pertaining to Bandru’s 1993 accident.
Psychiatric/Psychological Treatment
Fawzen also seeks to obtain the records of a psychiatrist, Dr. Matthew Berger, and psychologist, Lisa Starr, who reportedly treated Bandru for anxiety and depression fifteen years ago. Although Bandru has averred in his complaint *16 that his accident-related injuries have caused him “great pain, agony and suffering, both physical and mental,” (Docket Entry No. 1 at ¶ 7), he does not claim to have suffered anxiety, severe emotional trauma necessitating treatment, or some other recognized psychiatric condition as a result of the accident on September 1, 2012.
Section 5944 of the Judicial Code is entitled “Confidential communications to psychiatrists or licensed psychologist,” and provides that no psychiatrist or licensed psychologist “shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client.” 42 Pa.C.S. § 5944. Pennsylvania case law interpreting Section 5944 recognizes that a patient may waive that statutory privilege by the filing of a personal injury lawsuit, depending upon whether the plaintiff generally seeks to recover damages for mental anguish, distress, embarrassment and humiliation as components of non-economic loss, see Pa.R.C.P. 223.3, or affirmatively claims damages for anxiety or other designated mental disorders. In Gormley v. Edgar, 995 A.2d 1197 (Pa. Super. 2010), the plaintiff not only generally averred that she sustained permanent “shock to her nerves and nervous system” and “suffered severe physical pain, mental anguish and humiliation,” but further alleged that she experienced “great...frustration and anxiety, and...may continue to be so disabled for an indefinite time in the future.” Id. at 1204 & n.6. Defendant sought discovery of the plaintiff’s prior and subsequent mental health treatment records, and the plaintiff objected to that discovery based, inter alia, upon 42 Pa.C.S.A. §5944. Id. at 1203-04. The trial court found “that allegations of ‘emotional distress, anxiety and *17 mental anguish’ necessitated disclosure of the records at issue.” Id. at 1205 n.8.
On appeal, the Superior Court held that general averments of shock, mental anguish, distress and humiliation in connection with claims for noneconomic damages “neither place a party’s mental condition at issue nor result in a waiver of privilege” Id. at 1205. In contrast, allegations of anxiety or “mental injury, severe emotional trauma requiring treatment, or psychiatric/psychological conditions may, if otherwise relevant, result in a waiver of privilege protecting confidential communications pertaining to prior treatment for those conditions.” Id. Since the plaintiff in Gormley expressly claimed damages for anxiety, a recognized mental disorder, the appellate court reasoned that she “directly placed her mental condition at issue” and made her mental health records discoverable. Id. at 1205-06 & n.9; see also, Rost v. State Board of Psychology, 659 A.2d 626,629 (Pa. Cmwlth. 1995) (“The [psychologist-patient] privilege may be waived by the client...where the client places the confidential information at issue in the case.”), app. denied, 543 Pa. 699,670 A.2d 145 (1995).
In the case at bar, Bandru generally avers that he has suffered physical and mental pain, agony and suffering due to his injuries. However, he does not claim to have suffered any mental injury, severe emotional trauma requiring treatment, or any comparable psychiatric/ psychological condition. Based upon Gormley, Bandru’s mere allegation of mental pain, agony and suffering in connection with his claims for noneconomic loss does not result in an implied waiver of the psychiatrist/psychologist-patient privilege contained in 42 Pa.C.S.A. § 5944. Thus, due to the absence of any claim by Bandru for anxiety, *18 severe emotional trauma necessitating treatment, or some other recognized psychiatric/psychological condition, the records of Dr. Matthew Berger and Lisa Starr are not subject to discovery.
And now, this 16th day of March, 2015, upon consideration of plaintiff’s “appeal from order of discovery master of January 8, 2015,” the memoranda of law submitted by the parties, and the oral argument of counsel on February 24, 2015, and based upon the reasoning set forth above, it is hereby ordered and decreed that:
1. Plaintiff’s de novo “appeal from order of discovery master of January 8,2015” is granted in part and denied in part;
2. Plaintiff’s discovery appeal is denied and his objections pursuant to Pa.R.C.P. 4009.21 are overruled with respect to the subpoenas to be served upon W. Timothy Ward, M.D., of The University of Pittsburgh School of Medicine, William F. Dougherty, Psy.D., Whites Crossing Medical Group, Geisinger Community Medical Center for all records related to plaintiff’s prior automobile accident on September 29,1998, the records of Nationwide Insurance Company relating to that accident on September 29,1998, and the records of CNA Insurance Company and Nationwide Insurance Company pertaining to plaintiff’s earlier automobile accident on September 18, 1993; and
3. Plaintiff’s de novo appeal is granted and his objections pursuant to Pa.R.C.P. 4009.21 are sustained with regard to the subpoenas to be served upon the Veterans Affairs Medical Center, Matthew Berger, M.D., Lisa Starr, M.A., Dr. Gregory E. Cali, Dr. Darlene Dunay, Carl W. O’Hara, D.C., and The Wound Institute Research Center.

. Bandru originally objected to Fawzen’s subpoenas directed to Northeast Eye Institute, Planet Fitness, The Hospital for Special Surgery, Dr. Tiffany Griffiths, and Sears Optical but by “Praecipe for Withdrawal of Objections” dated April 25, 2014, and filed April 29, 2014, Bandru withdrew those objections. (Docket Entry No. 39).

. Under Local Rule 4000.1, discovery motions must initially be presented to and decided by the court-appointed Special Trial Master whose ruling “may be appealed de novo” to the court of common pleas within ten days of the Master’s decision. Fratzola v. Klepadlo, 26 Pa D & C. 5th 533, 537-538 (Lacka. Co. 2012).