**Michelle GORMLEY, Appellant**

v.

**Coty EDGAR, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2010.

Filed April 26, 2010.

Thomas J. Mettee, Philadelphia, for appellant.

Beth A. Carter, Philadelphia, for appellee.

Daniel E. Cummins, Scranton, for Pa. Defense Institute, Amicus Curiae.

BEFORE: BOWES, GANTMAN, and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Michelle Gormley appeals from the December 4, 2008 order compelling her to provide an executed consent for release of certain mental health records. We affirm.

¶ 2 Ms. Gormley commenced this personal injury action in arbitration against Coty Edgar to recover for injuries she sustained in a September 29, 2006 motor vehicle collision in Philadelphia. After an award was entered for Ms. Gormley, Mr. Edgar appealed to the court of common pleas for a trial *de novo*. During the course of pretrial discovery, Mr. Edgar served a subpoena upon Lower Bucks Hospital for Ms. Gormley's medical records. The hospital refused to provide the records without the patient's written consent. Ms. Gormley filed procedural objections to the subpoena which were stricken by the court. She then produced all hospital records, with the exception of records related to an August 24, 2007 gynecological visit and a March 12, 2005 emergency room visit. She also provided a privilege log citing the Mental Health and Procedures Act of 1996 as the basis for withholding the March 12, 2005 records. Mr. Edgar moved to compel special consent for the release of these records.

¶ 3 On December 4, 2008, a hearing was held on Mr. Edgar's motion to compel Ms. Gormley to execute the authorization and, at Ms. Gormley's request, the court conducted an *in camera* examination of both the March 12, 2005 records and the records from the gynecological visit of August 24, 2007. The court denied Mr. Edgar's motion as to the gynecological records, but granted the motion directing Ms. Gormley to execute the authorization with respect to the March 12, 2005 emergency room visit. This appeal followed.

¶ 4 Ms. Gormley raises five issues for our review, all of which involve allegations that the trial court erred and abused its discretion in ordering disclosure of her allegedly privileged mental health records. However, before we can address the merits of Ms. Gormley's claims, we must first determine whether an appeal properly lies from the interlocutory order herein. Generally, a party can appeal only after entry of a final order, and an order compelling discovery is not a final order. *Jones v. Faust*, 852 A.2d 1201 (Pa.Super.2004). However, Pa.R.A.P. 313 permits appeals from collateral orders, and our courts have held that discovery orders involving claims of privilege are subject to Pa.R.A.P. 313. *Commonwealth v. Makara*, 980 A.2d 138 (Pa.Super.2009). Pa.R.A.P. 313 provides:

(a) General Rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will irreparably be lost.

¶ 5 The threshold issue herein is whether the order, which compels disclosure of

putatively privileged mental health records, is an immediately appealable collateral order pursuant to Pa.R.A.P. 313(b).[1] Our Supreme Court recently held in *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121, 1129 (2009), that the collateral order doctrine permitted an appeal from a discovery order implicating the deliberative process privilege. However, the Court held that Pa.R.A.P. 313 must be narrowly applied on an "issue by issue" basis, and only that portion of the order that is collateral is subject to collateral review.[2]

¶ 6 An appeal from a discovery order raising a question of the application of a privilege in mental health records was held by this Court to be separable from the underlying action in *T.M. v. Elwyn, Inc.*, 950 A.2d 1050 (Pa.Super.2008). In that case, the defendant school objected to producing information regarding other lawsuits against it involving sexual abuse, battery, and negligent hiring, asserting that these documents contained "potentially, highly sensitive mental health data about non-party students" that was privileged under HIPAA, FERPA, and the MHPA. *Id.* at 1059. The trial court ordered defendant to produce the information and defendant filed a request for appellate certification. When the trial court did not rule on its request, the defendant filed a notice of appeal pursuant to the collateral order doctrine.

¶ 7 This Court held that the requirements of the collateral order doctrine were met. The privilege issues were separable from the underlying action because we did not need to reach the liability issues between the parties in order to determine its applicability. The right implicated, namely the right to confidentiality in matters of mental health treatment, was well-recognized and deeply rooted in public policy. The third prong of the test was satisfied because, without immediate review, the claims of privilege would be "irreparably lost." *Id.* at 1059.

¶ 8 In the instant case, Ms. Gormley challenges the order below on several bases: that the records in question are privileged and thus protected from disclosure; that the records are irrelevant to her claim; that the Rules of Civil Procedure do not compel disclosure under the circumstances herein; and that the order implicates constitutionally-protected privacy rights by permitting disclosure of mental health records. The privileges asserted here arise under the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.*, the Mental Health and Mental Retardation Act, 50 P.S. § 4101 *et seq.*, the Pennsylvania Alcohol and Drug Abuse Act, 71 P.S. § 1690.101 *et seq.*, and the psychiatrist/patient privilege, 42 Pa.C.S. § 5944. We are persuaded that the discovery order at issue, involving allegedly privileged mental health information, is appealable as collateral to the principal action pursuant to Pa.R.A.P. 313 and this Court's decision in *T.M. v. Elwyn, Inc., supra.*[3]

1. The trial court did not believe that the three prong test of Pa.R.A.P. 313 had been satisfied here. Trial Court Opinion, 7/14/09, at 3–6.

2. We are aware that the United States Supreme Court in *Mohawk Industries, Inc. v. Carpenter*, —— U.S. ——, 130 S.Ct. 599, —— L.Ed.2d —— (2009), recently held that the federal collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege. Our courts have held that such appeals are permitted pursuant to Pa. R.A.P. 313. *See PECO Energy Co. v. Ins. Co. of North America*, 852 A.2d 1230 (Pa.Super.2004); *Gocial v. Independence Blue Cross*, 827 A.2d 1216 (Pa.Super.2003).

3. Pursuant to the Supreme Court's direction in *Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d 1121 (Pa.2009), we will review only those issues involving claims of privilege. The trial court's relevancy determination, as well as its application of the discov-

¶ 9 Our Supreme Court in *Zane v. Friends Hospital,* 575 Pa. 236, 836 A.2d 25 (2003) recognized that the expectation of confidentiality in mental health records was essential to effective mental health treatment. We acknowledge that even the threat of disclosure of the contents of private mental health records can have a chilling effect on one's willingness to seek treatment. Where, as here, the privacy interest implicated is paramount, we believe that the policy against piecemeal review must yield to permit review.

¶ 10 Ms. Gormley raises five issues for our review: [4]

1. Was the trial court's December 4, 2008 Order an error of law and an abuse of discretion because, under the facts of this case, the emergency room mental health record in question is protected from disclosure pursuant to 50 P.S. § 7111, 50 P.S. § 4605, 42 Pa.C.S.A. § 5944, and 71 P.S. § 1690.108?

2. Was the trial court's December 4, 2008 Order an error of law and an abuse of discretion because the mental health record itself is irrelevant to [Ms. Gormley's] claim, refers to a time period remote from the accident date, is unrelated to any condition for which [Ms. Gormley] was treated following her motor vehicle accident, and is contrary to the Superior Court's decision in *Kraus v. Taylor,* 710 A.2d 1142 (Pa.Super.1998), which compels disclosure of certain protected records only where a claim of permanent injury is asserted?

3. Was the trial court's December 4, 2008 Order an error of law and an abuse of discretion when it ruled that [Ms. Gormley's] confidential mental health records are subject to disclosure despite the fact that Pennsylvania law, pursuant

to Pennsylvania Rules of Civil Procedure 4003.1 and 4011(a), (b), and (c), does not compel such disclosure in circumstances such as are present in the case below?

4. Was the trial court's December 4, 2008 Order, which implicates privacy concerns and involves rights deeply rooted in public policy going beyond this litigation, so fundamentally unfair as to violate the privacy requirements of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania because it is based on a policy permitting disclosure of mental health records which previously were neither disclosed nor made applicable to discovery by any case law, rule, standing order, specific order, or other published authority?

5. Was the trial court's December 4, 2008 Order, an error of law and an abuse of discretion because at hearing the trial court never articulated its analysis of the issues, its reasoning process, or the basis for the court's decision as to whether the privileges claimed barred discovery?

Ms. Gormley's brief at 2–3.

 ¶ 11 Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary. *Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1125 (Pa.Super.2007).

¶ 12 Ms. Gormley initially contends that the discovery order compelling her to execute a consent that would permit Mr. Edgar to obtain mental health outpatient treatment records contravenes various

---

ery rules generally, fall outside the scope of this Court's review of the collateral order.

4. Ms. Gormley's issues have been renumbered for the convenience of the Court.

privileges. Specifically, she argues that the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.*, (MHPA), and its confidentiality provisions contained in § 7111(a), and the Mental Health and Mental Retardation Act of 1966, (MHMRA), specifically 50 P.S. § 4605, prohibit disclosure of the records at issue. We disagree.

■ ¶ 13 The MHPA has been interpreted as providing a statutory privilege of confidentiality in the patient's records. *Commonwealth v. Moyer,* 407 Pa.Super. 336, 595 A.2d 1177, 1180 (1991). The confidentiality provisions of Section 7111 apply to all documents regarding treatment, not just medical records. *Zane v. Friends Hospital, supra.* Section 7111 provides:

> (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>> (1) those engaged in providing treatment for the person;
>> (2) the county administrator, pursuant to section 110;
>> (3) a court in the course of legal proceedings authorized by this act; and
>> (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

50 P.S. § 7111(a).

■ ¶ 14 The MHPA, however, only "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103 (Scope of act). The records at issue pertain to an emergency room visit culminating in what Ms. Gormley described as a "casual evaluation." N.T. Hearing, 12/4/08 at 5. It appears that treatment was volun-

tary and provided on an outpatient basis. Such treatment is not encompassed within the protection of the Act. Accordingly, the trial court correctly held that the confidentiality provisions of § 7111 do not apply.

■ ¶ 15 Likewise, Ms. Gormley's contention that the records are protected from disclosure pursuant to 50 P.S. § 4605 of the Mental Health and Mental Retardation Act, is also without merit. This provision makes it unlawful for "any person to disclose without authority the contents of any records or reports touching upon any matter concerning a person who has been admitted, committed or detained pursuant to the provisions of this act." Ms. Gormley was not a person "admitted, committed or detained" under MHMRA, and thus, this provision offers no support for a claim of privilege. Nor does the confidentiality provision of the Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. § 1690.108, provide a basis for protecting Ms. Gormley's mental health records from disclosure, as she acknowledges that drugs and/or alcohol are not at issue herein. Ms. Gormley's brief at 13.

■ ¶ 16 Ms. Gormley also asserts that 42 Pa.C.S. § 5944, the statutory psychiatrist-psychologist/patient-client privilege, protects her mental health records from disclosure. The trial court, having reviewed the records *in camera,* agreed that the privilege, set forth below, was applicable, but held that it was waived because Ms. Gormley placed her mental health at issue. This ruling is at the heart of our review herein and implicates the following statutory provision:

> § 5944. Confidential communications to psychiatrists or licensed psychologists
>
> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written

consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

This statute pertains only to confidential communications between psychiatrists or psychologists and their patients/clients that were made in the course of treatment, not to all records and documents regarding mental health treatment. *Gates v. Gates,* 967 A.2d 1024 (Pa.Super.2009). "The purpose of the psychologist/patient privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure." *Zane v. Friends Hospital, supra* at 33. The privilege is based upon a strong public policy designed to encourage and promote effective treatment and to insulate the client's private thoughts from public disclosure. *Kalenevitch v. Finger,* 407 Pa.Super. 431, 595 A.2d 1224 (1991). This Court holds this privilege in the highest regard, recognizing that such confidential statements are the key to the deepest, most intimate thoughts of an individual seeking solace and treatment. However, such confidential communications are only protected to the same extent as those between an attorney and his client. The privilege is not absolute; it may be waived.[5] Our Commonwealth Court in *Rost v. State Board of Psychology,* 659 A.2d 626, 629 (Pa.Cmwlth. 1995), held that the privilege may be waived in civil actions "where the client places the confidential information at issue in the case." In those circumstances, the client himself or herself has turned the key to voluntarily unlock those privileged communications.

¶ 17 Ms. Gormley challenges the trial court's finding that she specifically placed her mental condition at issue so as to result in a waiver of the privilege. Ms. Gormley stated on the record that she did not intend to proffer psychological or psychiatric testimony at trial and that her claims were not permanent in nature. N.T. Hearing, 12/4/08, at 5. The trial court focused, however, on the allegations contained in paragraph twelve of Ms. Gormley's complaint. Therein, she averred that, as a result of Mr. Edgar's negligence, she

> "has been unable to attend to her usual duties and occupations, avocations and enjoyment of life, all to her great loss, frustration and anxiety, and she may continue to be so disabled for an indefinite time in the future."

Complaint ¶ 12.[6] When Ms. Gormley refused to withdraw paragraph twelve, the

---

**5.** The statutory psychiatrist-psychologist/patient-client privilege, 42 Pa.C.S. § 5944, does not expressly mention "waiver." However, it does provide that confidential communications between psychiatrists/psychologists and their clients will be treated in the same way as communications subject to the attorney-client privilege. The statutory provision governing the attorney-client privilege in civil actions, 42 Pa.C.S. § 5928, expressly states that the privilege may be waived.

**6.** The trial court did not ask Ms. Gormley if she was willing to withdraw paragraphs fourteen and fifteen of her Complaint which allege:

> "14 As a direct and proximate result of the accident herein referenced, the plaintiff has suffered a severe shock to her nerves and nervous system, a condition which may be permanent or continue for an indefinite time in the future."

> "15 As a further result of the said accident, plaintiff has suffered severe physical pain, mental anguish and humiliation and which such suffering may continue for an indefinite period of time in the future."

Complaint, ¶¶ 14, 15.

trial court held that by her averments, "Plaintiff necessitated the disclosure of medical records regarding [her] mental health evaluation at LBH." Trial Court Opinion, 7/14/09, at 9.[7]

¶ 18 The trial court held that the allegations of paragraph twelve, as distinguished from the allegations of paragraphs fourteen and fifteen, placed Ms. Gormley's mental health at issue.[8] Paragraph twelve contains an allegation of anxiety, a recognized mental condition,[9] while the other paragraphs contain general averments of shock, mental anguish and humiliation, routinely recoverable damages for noneconomic loss in Pennsylvania.[10] We agree that these latter general allegations alone neither place a party's mental condition at issue nor result in a waiver of privilege. In contrast, allegations of mental injury, severe emotional trauma requiring treatment, or psychiatric/psychological conditions may, if otherwise relevant, result in a waiver of privilege protecting confidential communications pertaining to prior treatment for those conditions.

¶ 19 The trial court relied upon this Court's decision in *Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998), for the proposition that privileges protecting records for mental health treatment, drug and alcohol rehabilitation, and communications to psychiatrists/psychologists are waived by filing a personal injury lawsuit placing such conditions at issue. *See Rost v. State Board of Psychology, supra.* In *Kraus, supra,* this Court approved the rationale of several federal courts holding that under Pennsylvania law, placing one's mental condition at issue in a civil trial is an implicit waiver of pertinent statutory privileges. *See Mulholland v. Dietz,* 896 F.Supp. 179 (E.D.Pa.1994) (citations omitted). In *Premack v. Ogar,* 148 F.R.D. 140, 145 (E.D.Pa.1993), the district court held that where plaintiffs put their mental conditions at issue, "[t]o allow a patient to hide a previously existing condition behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." In *Kraus, supra,* we agreed that our legislature could not have intended the miscarriage of justice that would result if a plaintiff could file a lawsuit and then deny a defendant relevant evidence that would mitigate defendant's liability. This Court perceived a legislative intent for "the privileges to

---

7. The trial court opinion is not paginated. All references to the trial court opinion are based on our sequential numbering of pages.

8. The trial court in its opinion mistakenly stated that allegations of "emotional distress, anxiety, and mental anguish" necessitated disclosure of the records at issue. Trial Court Opinion, 7/14/09 at 9. Neither emotional distress, a recognized independent cause of action in Pennsylvania, nor mental anguish, an element of "pain and suffering," was included in paragraph twelve. Although the trial court erroneously relied upon these allegations as a basis for its decision, we can affirm on any basis and find the allegation of anxiety is sufficient to support our decision to affirm. *Commonwealth v. Sholcosky,* 553 Pa. 466, 719 A.2d 1039, 1047 (1998).

9. Anxiety is a designated mental disorder in the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., better known as DSM IV.

10. Juries are instructed on past and future noneconomic loss in actions for bodily injury or death. Four items compose a damage award for noneconomic loss: pain and suffering, embarrassment and humiliation, loss of ability to enjoy the pleasures of life, and disfigurement. Pain and suffering includes "mental anguish, discomfort, inconvenience, and distress." *See* Pa.R.Civ.P. 223.3 (effective date December 1, 2004). Prior to Pa. R.Civ.P. 223.3, "loss of life's pleasures" was treated as part of "pain and suffering." *See Carpinet v. Mitchell,* 853 A.2d 366 (Pa.Super.2004).

yield before the state's compelling interest in seeing that truth is ascertained in legal proceeding and fairness in the adversary process." *Kraus, supra* at 1145 (quoting *Thorne v. Universal Properties,* 1987 WL 7683, 1987 U.S.Dist. LEXIS 1906 (E.D.Pa 1987)).

 ¶ 20 Ms. Gormley takes issue, however, with the trial court's application of *Kraus, supra,* on the facts of this case. She construes *Kraus* as allowing the introduction of confidential mental health records where *permanent* injuries are alleged, but disputes that she asserted such permanent mental injuries herein. Ms. Gormley's brief at 16–17. Mr. Edgar counters that Ms. Gormley's reliance on *Kraus,* for the proposition that "permanency" is the determinative factor in whether mental health records are entitled to protection, is misplaced. Mr. Edgar's brief at 19. We concur. The permanence of the injury was pivotal in *Kraus* because it made evidence of plaintiff's chronic drug and alcohol abuse relevant to the jury's evaluation of his life expectancy, and hence, admissible. "Permanency" was not the factor herein that compelled the disclosure of Ms. Gormley's mental health records. Ms. Gormley directly placed her mental condition at issue when she alleged

that she suffered from anxiety as a result of the accident. Absent other considerations militating against disclosure, the records are discoverable. It would clearly be unfair for a party to seek recovery for anxiety if that mental health issue predated the accident.[11] Moreover, where a party seeks recovery for aggravation of a preexisting mental health condition, records of prior treatment for that condition are discoverable.

¶ 21 The trial court examined the records *in camera,* thereby affording Ms. Gormley additional protection, prior to compelling their disclosure.[12] Accordingly, the trial court did not abuse its discretion in holding, on these facts, that Ms. Gormley had waived any privilege in the records and that they were subject to disclosure. The court specifically reserved any ruling on the admissibility of such records at trial.

¶ 22 In Ms. Gormley's third issue, she argues that the trial court abused its discretion when it ordered disclosure despite Pa.R.Civ.P. 4003.1 and 4011(a), (b), and (c). Rule 4003.1 permits discovery of any matter not privileged; as we have found *supra,* the records in question are no longer privileged.[13] Furthermore, Ms. Gormley's

---

**11.** *Amicus curiae* in support of Mr. Edgar insisted that disclosure might result in mitigation of Defendant's damages if mental health injuries pre-existed the accident, yet approved of the "extra level of protection" afforded by the *in camera* inspection. *Amicus* Brief Submitted by the Pennsylvania Defense Institute in Support of Appellee Coty Edgar, at 20.

**12.** *Amicus curiae* in support of Ms. Gormley recommended that subpoenas or authorizations direct that records be sent directly to counsel for plaintiff. After review, plaintiff would forward to defendant those records counsel deems to be relevant, along with a brief description of what records have not been provided and why. If disputes remained, counsel for defendant could file a motion with the court asking for an *in camera*

inspection. While this procedure was not strictly followed in the instant case, the result was the *in camera* inspection prior to disclosure that Ms. Gormley's *amicus curiae* endorsed as a means of "provid[ing] for the defendant's concerns for the full disclosure of discoverable matters without the need to compromise the plaintiff's protected privacy concerns." *Amicus* Brief Submitted by Pennsylvania Association for Justice in Support of Appellant's Position, at 16.

**13.** The trial court stated that Pa.R.Civ.P. 4003.1 provided the rationale for its decision not to release the OB/GYN records; the same considerations compelled the court to permit discovery of the mental health information. Trial Court Opinion, 7/14/09, at 7.

contention that the trial court abused its discretion in failing to prohibit disclosure of her records as discovery "sought in bad faith or that would cause unreasonable annoyance, embarrassment, oppression, burden or expense, or that is otherwise beyond the scope of discovery," is beyond the scope of our narrow review herein. See Pa.R.Civ.P. 4011.[14]

¶ 23 In her next issue, Ms. Gormley characterizes the order in question as "so fundamentally unfair as to violate the privacy requirements" of the Constitution of the United States and Pennsylvania, as recognized by the legislature in enacting the MHPA. Ms. Gormley's brief at 22. Her reliance upon *Hahnemann University Hosp. v. Edgar,* 74 F.3d 456 (3d Cir.1996), is inapposite because it turned on 50 P.S. § 7111, the confidentiality provision of the MHPA, which, as analyzed, *supra,* is inapplicable herein. While our Supreme Court acknowledged in *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 77–78 (1980), that there may be situations where disclosure of confidential communications would pose such a serious threat to a patient as to be constitutionally impermissible, there are no facts of record upon which to base such a finding herein.

¶ 24 Finally, Ms. Gormley asserts that the trial court's order constituted an abuse of discretion and an error of law because it "contains no analysis of the issues, the reasoning behind its decision, nor the basis for its decision." Ms. Gormley's brief at 14. The only authority cited by Ms. Gormley in support of such a proposition is *Kurtzman v. Hankin,* 714 A.2d 450 (Pa.Super.1998), where the court's failure to articulate in its **opinion** its reasons for closure of the record constituted an abuse of discretion. We know of no requirement that the trial court articulate its reasons in

a discovery **order.** Indeed, the trial court's opinion herein was more than adequate to facilitate this Court's review.

¶ 25 For all of the foregoing reasons, we affirm the order below.

¶ 26 Order affirmed. Case remanded. Jurisdiction relinquished.

14. The records in dispute are not included in the certified record.