J-A26027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.G., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.G. | : : : : : : : : | |
| | : | No. 476 MDA 2017 |

Appeal from the Order Entered March 15, 2017
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2017-3322-CV,
CP-21-JV-0000206-2014

BEFORE: BOWES, J., OLSON, J., and RANSOM*, J.

DISSENTING MEMORANDUM BY BOWES, J.: **FILED MAY 18, 2018**

The learned majority presents a scholarly expression of rationale. I agree with the finding that the trial court violated Appellant's psychiatrist-patient privilege by failing to adequately redact the April 7, 2015 psychiatric evaluation performed by Rocco Manfredi, M.D., before it submitted the document to the Sex Offender Evaluation Board ("SOAB") for its assessment of Appellant pursuant to Act 21 of 2003 ("Act 21").[1] Accordingly, I adopt that portion of the majority memorandum in its entirety. However, unlike my esteemed colleagues, I do not believe that the myriad violations of the psychiatrist-patient privilege in this case can be relegated to harmless error.

---

[1] Act 21, 42 Pa.C.S. § 6401, amended the Juvenile Act to include procedures for the assessment and civil commitments of sexually violent juveniles who have been adjudicated delinquent. *In Re K.A.P.*, 916 A.2d 1152, 1156 n.3 (Pa.Super. 2007)

---

* Retired Senior Judge assigned to the Superior Court.

Thus, I do not join the majority's decision to affirm the order of civil commitment.

As codified in 42 Pa.C.S § 5944, the psychiatrist-patient privilege provides a follows:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services on behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

The privilege is designed to protect disclosures made by patients during the course of treatment. *Commonwealth v. Carter*, 821 A.2d 601 (Pa.Super. 2003). It is intended to aid in the effective treatment of a mental health patient by encouraging the patient to disclose information fully and freely without fear of public exposure. *In re T.B*., 75 A.3d 485 (Pa.Super. 2013). Stated another way, its purpose is to inspire confidence in the patient that the information he provides will not be used against him. *Gormley v. Edgar*, 995 A.2d 1197 (Pa.Super. 2010).

In *In re T.B.*, this Court applied § 5944 within the framework of an Act 21 assessment. In invoking the statutory privilege, we recognized "that the confidential statements the law protects 'are the key to the deepest, most intimate thoughts of an individual seeking solace and treatment,' and may not be readily disclosed." *In re T.B.*, *supra* at 496 (quoting *Gormley*, *supra* at

- 2 -

1204). Thus, as we held in **In re T.B.**, a juvenile's statements made to a mental health professional during treatment are privileged, and absent written consent, the statements may not be released to the SOAB. **Id**. at 497.

As the majority observed, the Commonwealth's expert, SOAB member Robert M. Stein, Ph.D., opined from his review of the partially redacted records provided by the trial court that Appellant met the criteria for civil commitment under Act 21 because Appellant suffered from a mental abnormality such that he is likely to commit violent sexual acts if released into the community. While the majority notes that Dr. Stein's opinion was formed, at least in part, in reference to the April 7, 2015 psychological evaluation performed by Dr. Manfredi, wherein Appellant admittedly made several incriminating revelations for the purpose of his treatment, it concludes that the disclosure was tantamount to harmless error. I disagree.

An error is harmless if "the appellate court determines that the error could not have contributed to the verdict." **Commonwealth v. Rush**, 605 A.2d 792, 794 (Pa. 1992). Rephrased for clarity, "an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." **Commonwealth v. Cooley**, 118 A.3d 370, 380 (Pa. 2015). As we recently reiterated,

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and

uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Radecki*, 180 A.3d 441, 461 (Pa.Super. 2018) (quoting

*Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002)).

The majority provides two independent bases to find harmless error: 1) Appellant's expert did not contest Dr. Stein's assessment of a mental disorder and predisposition to commit violent sexual acts; and 2) Dr. Stein's opinion was not influenced by the privileged communication. In my view, neither ground permits us to ignore the blatant violations of the psychiatrist-client privilege in this case, especially in light of the purpose of the privilege and the public policy that it was designed to reinforce, *i.e.*, to inspire confidence that the information patients provide in furtherance of treatment will not be used against them.

First, I believe application of the harmless error doctrine is inappropriate in the present scenario. I note that this Court did not envision the application of the harmless error analysis in *In re T.B.*, *supra*. Instead, having found that the trial court erred in forwarding unredacted treatment documents to the SOAB for its Act 21 assessment, we simply vacated the civil commitment order and remanded the matter for the trial court to "to determine whether the statements, evaluations and summaries at issue were completed for treatment purposes." *Id*. at 496. Tellingly, we instructed the trial court that, if "the statements, evaluations, and summaries were made for treatment

- 4 -

purposes and the juvenile was not represented by counsel and informed of his right against self-incrimination, the court **shall** vacate the determination of the SOAB and may resubmit the matter for evaluation by the Board without access to the records in question." ***Id***. at 497 (emphasis added). As it is clear in the case at bar that Appellant's statements and admissions were made for treatment purposes and that he was neither represented by counsel nor informed of his right against self-incrimination, I would vacate the civil commitment order and direct that the SOAB perform a new assessment that does not implicate Appellant's privileged communications.

Second, even if a harmless error analysis is appropriate in Act 21 cases, I do not believe it would be warranted herein, where the SOAB assessment was obviously tainted by the consideration of Appellant's privileged communications. While the majority notes the SOAB's reference to Dr. Manfredi's 2015 evaluation report, it neglects to acknowledge that said report specifically referenced a prior psychiatric evaluation performed by Craig A. Taylor, M.D. on October 11, 2013. That earlier evaluation contained additional damning statements that Appellant made to his physicians for the purpose of treatment.

My review of the two psychiatric evaluations exposes the following revelations that Appellant made to mental health professionals during treatment. In January 2013, Appellant reported "command auditory hallucinations," including "hallucinations of his biological mother's voice telling

him to hurt himself and others." Psychiatric Evaluation, 10/11/13, at 1, 2. Nine months later, he "admitted to having inappropriate sexual contact with a younger adoptive sister as well as foster siblings when in the adoptive home." *Id*. at 1. During the interview phase of the 2013 evaluation, Appellant "state[d] that he had heard voices and things over the past weekend but could not 'really say' what they were and did not want to talk about it." *Id*. at 4. In addition, "[h]e denie[d] suicidal ideations, homicidal ideation or urges to harm [him]self or others." *Id*.

The subsequent evaluation by Dr. Manfredi confirmed Appellant's earlier reports of hallucinations. Moreover, the juvenile advised Dr. Manfredi "that over the past few years[,] voices have told him to harm others. They also tell him the future. He claims that it is different voices and [it] will occur randomly." Psychiatric Evaluation, 4/7/15, at 2. However, "[h]e denied thought insertion, thought broadcasting, [and] thought withdrawal." *Id*. Similarly, Appellant "denied obsessions, compulsions and phobias." *Id*. at 3. Significantly, as it relates to the content of the information that was incorporated into Dr. Stein's SOAB assessment, Appellant previously revealed to his mental health professionals that he abused his younger sister, reviewed pornography "almost on a daily basis," and "acknowledge[d] rape force fantasies." *Id*. In addition, Dr. Stein recalled, "[Appellant] has self-reported behaviors of a paraphiliac or sexually deviant nature that has included

exposing himself, sex with animals, peeping[-]Tom type behaviors, and fondling of young girls." N.T., 3/13/17, at 13.

All of the foregoing privileged information was improperly submitted to the SOAB without adequate redaction, either directly or included within the sources that Dr. Stein reviewed to make his determination. Furthermore, my review of the certified record belies the majority's contention that "Dr. Stein's opinions on Appellant's mental abnormalities and his likeliness to commit sexually violent acts if released into the community were not influenced by the documents improperly sent the SOAB in unredacted form." Majority Memorandum at 12. In actuality, Dr. Stein testified that he utilized **all** of the information that he was provided about Appellant, including "statements that he made while in treatment to various mental health professionals." N.T., 3/13/17, at 24. Furthermore, Dr. Stein confirmed that Appellant's statements were made for the purposes of treatment, and he acknowledged that, to his knowledge, the juvenile was not advised of his right against self-incrimination and the information was released to the SOAB without the juvenile's written consent. *Id*. at 24, 25-26. Moreover, contrary to the majority's classification of Appellant's revelations as inconsequential, Dr. Stein deemed the various statements significant. Indeed, as set forth, *infra*, Dr. Stein expressly characterized the information in terms ranging from "component[s] of the analysis" to "important" to "extremely important." *Id*; N.T., 12/19/16, at 28, 32. Thus, I cannot countenance the conclusion that the multiple violations of

the psychiatrist-patient privilege, some of which I outlined *supra*, did not influence Dr. Stein's ultimate conclusion regarding Appellant's mental abnormalities and his likeliness to commit sexually violent acts if released into the community.

Dr. Stein first presented the SOAB assessment report to the trial court during the December 19, 2016 dispositional review hearing to determine whether probable cause existed to begin the civil commitment process under § 6358(e). During cross-examination, Dr. Stein confirmed that the statements Appellant made to his mental health treatment professionals, including self-reported offenses that were never charged, were "important" to forming the opinion presented in his SOAB assessment report. N.T., 12/19/16, at 28. He subsequently reiterated that the disclosures and self-reported deviant behaviors were "part of . . . the entire evaluation" and explained that a maintenance polygraph test, which Dr. Stein characterized as "of most concern for this type of proceeding," was populated with questions that were derived from Appellant's prior statements to mental health professionals during treatment. *Id*. at 29, 31. Dr. Stein stated that Appellant's revelations regarding prior sexual activities and ideations were "extremely important" to his assessment. *Id*. at 32.

Later, during the formal Act 21 involuntary commitment hearing, Dr. Stein again presented the SOAB assessment report, testified about its preparation, and reiterated that he relied upon Appellant's self-reporting as a

component in his determination regarding Appellant's likelihood to reoffend. N.T., 3/13/17, at 16. In fact, Dr. Stein unabashedly identified Appellant's self-disclosed cognitive distortions as an example of the juvenile's "questionable internal motivation for change." *Id*. at 16-17. Likewise, after summarizing Appellant's psychiatric diagnoses, Dr. Stein opined, "given this collection of disorders all related to impulse control problems and the history of pedophiliac behavior or sexual behavior with children, taken together there is sufficient evidence for a mental abnormality that would predispose to sexual offending." *Id*. at 14. Hence, the certified record bears out that the SOAB considered the privileged statements in its assessment.

Contrary to the majority, I believe that the foregoing disclosures that Appellant provided during the course of his mental health treatment undoubtedly formed part of Dr. Stein's expert conclusion regarding Appellant's likeliness to commit sexually violent acts if released into the community. From my perspective, the consideration of the privileged statements that Appellant made for the purposes of treatment, including reports of auditory hallucinations and various admissions to sexually deviant behaviors, tainted the board's conclusion that involuntary civil commitment was warranted pursuant to 42 Pa.C.S. 6403(a)(3). Unlike my learned colleagues, I do not believe that we can sidestep the stain of unauthorized disclosure by combing the record for an independent basis to find the error harmless.

Thus, consistent with our directive in **_In re T.B._**, **_supra_**, I would remand the matter for a new civil commitment hearing utilizing a SOAB assessment that was not complied by individuals whose outlook was tainted by exposure to privileged mental communications.