J-A08031-23

2023 PA Super 84

| | | |
|---|---|---|
| CARDINAL MIDSTREAM II, LLC, INDIVIDUALLY, AND PER MIDSTREAM, LLC, BY AND THROUGH CARDINAL MIDSTREAM II, LLC, ITS SELLERS REPRESENTATIVE | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 609 WDA 2022 |
| ENERGY TRANSFER LP, F/K/A ENERGY TRANSFER OPERATING, L.P., F/K/A ENERGY TRANSFER PARTNERS, L.P., AND ETC NORTHEAST PIPELINE, LLC, F/K/A ETC NORTHEAST MIDSTREAM, LLC, F/K/A ETC CARDINAL MIDSTREAM, LLC | : : : : : : : : : : | |
| Appellants | : | |

Appeal from the Order Entered April 22, 2022
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10523 of 2021

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.:  **FILED:  May 16, 2023**

The substantive issue in this appeal concerns whether engineering reports required by governmental agencies are privileged work product when prepared at the direction of corporate counsel.  The Appellants (Energy Transfer LP, F/K/A Energy Transfer Operating, L.P., F/K/A Energy Transfer Partners, L.P., and ETC Northeast Pipeline, LLC, F/K/A ETC Northeast

_____

* Retired Senior Judge assigned to the Superior Court.

Midstream, LLC, F/K/A ETC Cardinal Midstream, LLC) (collectively, ETC), were ordered to turn over to the Appellees (Cardinal Midstream II, LLC, individually, and per Midstream, LLC, by and through Cardinal Midstream II, LLC, its sellers representative (collectively, Cardinal), expert reports which ETC had, by government mandate, created during an investigation of a gas pipeline explosion. The Court of Common Pleas of Beaver County (trial court) determined that ETC's expert reports were not privileged, making them discoverable by Cardinal, the plaintiff in the underlying breach of contract action which stems from the pipeline incident. For the reasons below, we affirm the trial court's order.

## I.

On September 10, 2018, a landslide in Beaver County caused the Revolution Pipeline (the pipeline) to explode, resulting in a large fire that caused significant property damage and pollution of the surrounding area. Allegedly, pursuant to the 2017 Membership Interest Purchase Agreement (MIPA) between ETC and Cardinal, ETC was responsible for the construction and maintenance of the pipeline. The explosion occurred before the pipeline was completed.

Following the explosion, Cardinal filed a complaint against ETC, alleging two counts of breach of contract and damages totaling $55,000,000. According to the allegations in the complaint, ETC was obligated under the MIPA to enable Cardinal and its affiliates to transport natural gas through the

pipeline, but the explosion (allegedly caused by ETC's faulty construction and maintenance) prevented Cardinal from ever using the pipeline for that purpose. It was also alleged that ETC was contractually bound to tender "earnout" payments to Cardinal if its subsidiaries were ready to use the pipeline and meet certain delivery thresholds. Cardinal's most recent complaint was filed on June 30, 2021, and it outlines in greater detail the finer points of the natural gas delivery process, as well as the structure of the earnout payments. *See* Amended Complaint, 6/30/2021, at paras. 22-33.[1]

Separate and apart from Cardinal's suit, state and federal statutes allowed state and federal agencies to require ETC to retain experts to investigate the cause of the pipeline accident and submit their findings to government authorities. To that end, ETC hired three consultants in the aftermath of the pipeline explosion to identify what went wrong. The three experts were GeoEngineers, Inc.; Dynamic Risk Assessment Systems, Inc.; and Kiefner & Associates.

---

[1] While crucial to the contractual duties of the respective parties, the intricacies of the pipeline system and the financial structure of the MIPA are not germane to the dispositive issues in this appeal – whether ETC's reports are discoverable. It suffices to say that Cardinal would be due money damages if ETC is found liable for a breach of contract, and that ETC's reports contain expert opinions which potentially bear on ETC's contractual liability. Whether ETC breached a contractual duty as Cardinal alleges is not before us in this appeal.

The experts' analyses were documented in four different reports, all of which ETC turned over to the Pennsylvania Department of Environmental Protection (PADEP); the Pennsylvania Public Utility Commission (PPUC); the Pennsylvania Office of Attorney General (POAG); and the U.S. Attorney for the Western District of Pennsylvania (DOJ).

ETC contends that these reports must be afforded the protections of Pennsylvania Rule of Civil Procedure 4003.5(a)(3), which limits the discoverability of facts and opinions held by non-testifying experts retained by a party in anticipation of litigation. As to PADEP, PPUC and POAG – the Pennsylvania government entities – ETC also sought to have the material in the reports treated as confidential security information under 35 P.S. § 2141.1. As to the federal entity, the DOJ, the reports were designated by ETC as strictly confidential under the Trade Secrets Act, 18 U.S.C. § 1905.

The reports were also a central focus of two civil matters. In a declaratory judgment action arising from the same pipeline explosion (**PennEnergy Resources, LLC v. ETC Northeast Pipeline, LLC**, GD 19-013445), Judge Christine Ward of the Court of Common Pleas of Allegheny County ruled that the reports now at issue were not privileged as ETC had contended. The reports were, rather, deemed discoverable to the plaintiff, PennEnergy, which is an affiliate of Cardinal. ETC sought review of that discovery order, but the case (**PennEnergy I**) was settled while the appeal on the discovery issue was still pending, rendering the appeal moot.

PennEnergy is also engaged in a separate arbitration with ETC that is ongoing. After serving document subpoenas on ETC to obtain the reports, PennEnergy moved to enforce its subpoenas in ***PennEnergy Resources, LLC v. ETC Northeast Pipeline, LLC, and Energy Transfer, LP***, GD 21-011043 (***PennEnergy II***). ETC objected, and in response, Judge Philip Ignelzi of the Court of Common Pleas of Allegheny County ordered ETC to produce the reports. ETC appealed, but while the appeal was pending, Judge Ignelzi entered a sanction order compelling ETC to produce the reports within two hours of the order's entry. The sanction order also imposed a potential fine of $1,000,000 per day in the event of ETC's non-compliance. While reserving its appellate rights, ETC complied and produced the reports to PennEnergy. However, this Court dismissed ETC's appeal, and our Supreme Court denied *allocatur*.

The instant case brought by Cardinal against ETC has progressed amid the above-described web of interconnected disputes over the discoverability of the reports. Even though its affiliate, PennEnergy, already has possession of the reports in a finalized case (***PennEnergy II***), Cardinal has filed interrogatories and document requests seeking ETC's disclosure of the reports. Cardinal has also given notice of its intent to serve a subpoena on one of ETC's subsidiaries (ETC Northeast Field Services), again seeking the disclosure of the materials now at issue. ETC objected to the subpoena and all of Cardinal's interrogatories on the grounds of privilege and confidentiality.

On March 24, 2022, Cardinal filed a "Motion to Compel Discovery Directed to [ETC] and Overrule [ETC's] Objections to Third Party Subpoena." ETC filed a response and a supplemental response. On April 22, 2022, the trial court ruled that any privilege ETC may have had with respect to the reports was waived as to all of ETC's potential adversaries once the reports were voluntarily disclosed to governmental agencies. The reasons for that decision were stated in greater detail in the trial court's 1925(a) opinion, which substantially adopted the waiver-based approach of Judge Ward in the *PennEnergy I* matter discussed above. *See* Trial Court 1925(a) Opinion, 7/7/2022, at 8-10 (employing work product waiver analysis based on the reasoning of *BouSamra v. Excela Health*, 210 A.3d 967, 978 (Pa. 2019), and *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991).[2]

ETC timely appealed, raising two main issues in its appellate brief concerning issues of waiver:

> 1. Did the [trial court] err as a matter of law or abuse its discretion in finding a blanket waiver of the protection under Rule 4003.5 based on the disclosure of consulting reports in response to compulsory process and pursuant to confidentiality requirements?

---

[2] In yet another related case stemming from the explosion of the Revolution Pipeline, a New York appellate court upheld the denial of ETC's motion for a protective order as to the reports. The New York Court found that ETC's privilege claim had been fully litigated in the two *PennEnergy* cases, where the reports were found to be not privileged and discoverable. *See GSCP VI Edgemarc Holdings, LLC et al v. ETC Northeast Pipeline, LLC*, 211 A.D.3d 578 (N.Y. App. Div. 2022).

2. Did the [trial court] err as a matter of law and/or abuse its discretion by failing to find that even if the privilege and/or protection were waivable, [ETC] did not waive the privilege and/or protection here?

Appellant's Brief, at 6 (suggested answers omitted). Because the reports have been disclosed in the other cases, ETC also sought a "claw back" of those reports so that Cardinal could not use them against ETC in subsequent litigation.

Cardinal, for its part, contends that this appeal should be quashed for lack of jurisdiction because ETC has sought review of a collateral order that is not appealable. Alternatively, Cardinal argues that the appeal should be dismissed as moot because the reports at issue have already been disclosed to Cardinal.[3] In the event that the appeal is not quashed or found moot, Cardinal seeks affirmance of the trial court's order on the grounds that ETC is collaterally estopped from relitigating whether the reports are discoverable because the identical issue was fully litigated in the **PennEnergy** cases; the reports are not privileged; and ETC waived its present challenge by previously disclosing the reports to governmental agencies without being compelled to do so by a subpoena or court order.

---

[3] Prior to briefing, Cardinal raised its jurisdictional and mootness grounds in an application to dismiss ETC's instant appeal, and ETC filed a response. The application was deferred to the panel assigned to determine the merits of the appeal.

ETC responded in its reply brief that this Court has jurisdiction because, in short, discovery orders are immediately reviewable. The appeal is not moot, according to ETC, because it is entitled to "claw back" discovery material that it had been erroneously compelled to produce where, as here, its adversary would otherwise be able to exploit that material in subsequent proceedings to the detriment of ETC.

As to collateral estoppel, ETC argues that the doctrine does not apply because the prior cases in which the reports were ordered to be disclosed (*PennEnergy I* and *II*) were resolved before a court made a final adjudication, and the issue of the reports' discoverability was not essential to the underlying disputes in the cases. Moreover, ETC asserts that it did not waive any privileges in disclosing the reports in other cases because ETC disclosed them involuntarily while invoking its right to keep the material confidential.

## II.

We begin by addressing Cardinal's various contentions that ETC is procedurally barred from appealing the trial court's order. *First*, contrary to Cardinal's claim that this Court lacks jurisdiction, the discovery order on review is immediately reviewable pursuant to the collateral order doctrine. *See generally* Pa.R.A.P. 313(b); *Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011) ("orders overruling claims of privilege and requiring disclosures [are] immediately appealable."). Under Pa.R.A.P. 313(b), which

codifies the doctrine, an appeal may be taken from an otherwise unappealable order if (1) the order is separable from and collateral to the main cause of action; the right involved is too important to be denied review; and (3) the claim will be irreparably lost if review is postponed until after the final judgment. *See Harris*, 32 A.3d at 248.

The more specific jurisdictional point Cardinal raises as to the third prong – that the subject discovery order is not appealable because ETC's reports have already been turned over – is unavailing. Cardinal highlights language in *Harris* which suggests that once privileged material "is in the open, the bell has been rung, and cannot be unrung by a later appeal." *Id*. at 249. Apparently recognizing that this comment was *dicta* because the putatively privileged material in *Harris* was not disclosed to the party seeking disclosure, *see* 32 A.3d at 250-51, Cardinal also emphasizes the non-precedential decision in *Commonwealth v. Buttolph*, 1471 MDA 2012 (Pa. Super. November 26, 2013) (unpublished memorandum).

In that latter case, a criminal defendant sought to exclude inculpatory statements he made to his wife, invoking the marital privilege to bar admission of those statements at trial. Yet, in a later preliminary hearing, the defendant elicited those same statements from his wife while she was on the witness stand. On appeal, the *Buttolph* Court found that, "under the specific circumstances" of the case, the third prong of Rule 313(b) could not be met

because "the bell has already been rung . . . [and] it was [the party asserting privilege] who rung it." **Buttolph**, 1471 MDA 2012, at *8.

We find that **Buttolph** does not apply. The unpublished decision is not controlling,[4] and regardless, its outcome resulted from distinguishable facts. Unlike the defendant in **Buttolph**, the party invoking privilege here (ETC) was *compelled* to make its disclosure, at which time ETC turned over its material subject to its continuous assertions of privilege and confidentiality. ETC also produced its reports in the course of regulatory compliance, or in response to court orders, not haphazardly on the witness stand. Thus, the "specific circumstances" of **Buttolph** are simply not present here, and we see no compelling reason to quash ETC's appeal and thereby limit its ability to secure the confidentiality of its reports as its case against Cardinal unfolds.

*Second*, we find that ETC is not collaterally estopped from asserting a work product privilege in this case despite its prior disclosure of the reports. For collateral estoppel to apply, there had to be a final adjudication on the merits in the prior **PennEnergy** cases in which the reports were made discoverable; the discovery orders in those case also had to be "essential to the judgment." **See City of Pittsburgh v. Zoning Bd. of Adjustment of**

---

[4] Pa.R.A.P. 126(b) provides that an unpublished or "non-precedential decision" of the Superior Court may at most be cited for its persuasive value. Further, the rule only allows this Court to consider the persuasive value of unpublished decisions filed on or after May 1, 2019. **Buttolph** was filed prior to that date.

- 10 -

*City of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989). However, ETC discontinued its then-pending appeal of the discovery order in *PennEnergy I* when the case was settled, and ETC was denied appellate review of the order in *PennEnergy II*. In neither case was there a final adjudication of the underlying issue on the merits, nor was an issue essential to the judgment ever resolved. The discovery orders in the *PennEnergy* cases, therefore, do not collaterally stop ETC from having this Court consider the merits of its work product claim. *See Commonwealth v. Hude*, 425 A.2d 313, 319 (Pa. 1980).

*Third*, the present appeal is not moot as Cardinal contends. "As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." *In re M.B.*, 101 A.3d 124, 127 (Pa. Super. 2014) (quoting *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002)). "An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016).

Despite that Cardinal has already received ETC's reports through its affiliate, PennEnergy, ETC has identified ways in which it could be prejudiced by the subject discovery order during the remainder of the underlying case. The reports, for example, could be used against ETC at the summary judgment stage or at trial. Were this Court to decline consideration of the merits of this appeal, it would deprive ETC of the opportunity to seek appellate relief from

- 11 -

that prejudice, as it was afforded no appellate merits consideration in either of the **PennEnergy** cases. Accordingly, Cardinal's possession of the subject material, if erroneously granted, does not necessarily render the discovery issue moot because Cardinal's continued possession could still have a practical effect on the existing controversy.

## III.

Turning to the merits of ETC's appeal, we find that no relief is due because the trial court did not err in directing ETC to disclose the subject reports to Cardinal. Although the trial court resolved the parties' discovery dispute by finding a waiver of privilege on the part of ETC, we hold that the order on review must be affirmed because none of the reports were privileged work product in the first place.[5]

"A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a

---

[5] "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." **Gormley v. Edgar**, 995 A.2d 1197, 1202 (Pa. Super. 2010). This Court may uphold a trial court's order for any valid reason appearing in the record, even if the reason is different from the one given by the trial court. **See Ario v. Ingram Micro, Inc.**, 965 A.2d 1194, 1200 (Pa. 2009).

witness at trial[.]" Pa.R.C.P. No. 4003.5(a)(3).[6] The critical question, then, is whether ETC retained or specially employed those experts "in anticipation of litigation or preparation for trial." We find that because ETC was *required* to prepare those expert reports, ETC did not retain its experts or commission their reports for purposes that would bar them from Cardinal's discovery as privileged work product under Rule 4003.5(a)(3).

When a natural gas pipeline explodes, federal and state statutes permit governmental regulatory bodies to not only compel the production of failed sections of the pipeline, but also to mandate the creation of documents by expert witnesses as to the cause of the accident. **See** 58 Pa.C.S. § 3258(c) (statute authorizing PADEP to subpoena documents and pipeline materials for inspection); 66 Pa.C.S. § 309 (Pennsylvania Public Utility Code authorizing Commonwealth to compel production of witnesses and documents); **see also** C.F.R. § 192.617 (similar federal statute authorizing investigation of pipeline

---

[6] We note that that Pa.R.C.P. No. 4003.5(a)(3) is an exception to Rule 4003.3 which generally "permits discovery of work product, so long as the work product does not reflect or include mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. No. 4003.3. Work product that does not reflect or include these items is discoverable "even though" prepared in anticipation of litigation. **Id**. Thus, the Rule does not limit work product protection to materials prepared in anticipation. Rather, materials prepared in anticipation are not automatically protected. Nowhere does the Rule limit its protection of "mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories to materials prepared in anticipation." **Est. of Paterno v. Nat'l Collegiate Athletic Ass'n (NCAA)**, 168 A.3d 187, 200 (Pa. Super. 2017).

failures). Pursuant to those provisions, ETC was directed to retain experts to compile reports assessing why a section of its pipeline exploded in Beaver County in 2018. These directives required ETC to compile reports analyzing the cause of the incident regardless of the prospect of litigation.

Such corporate conduct – addressing a pipeline explosion in accordance with the directives of government regulators and binding law – is necessarily within ETC's regular course of business. What makes this all the more apparent is that the reports created and submitted by ETC to the governmental agencies were *identical* to the reports it created in response to the agencies' directives. These experts did not, insofar as the record reflects, generate separate analyses for ETC to use in potential litigation. This undercuts ETC's claim that it had independently generated the reports in preparation for litigation because, if that were completely true, the reports would not have been perfectly responsive to government demands for such disclosures.

It follows that ETC's *primary* purpose in creating those reports was not merely its anticipation of litigation. Even assuming that ETC invoked statutory confidentiality protections when disclosing the reports to government agencies, which would not somehow transform the character of the reports or

the conditions in which their creation was mandated, such that they would have to be treated as work product.[7]

Thus, because the reports were produced by experts retained by ETC in response to government directives, the reports were not privileged work product under Rule 4003.5(a)(3).  **See e.g.**, **Miller v. Brass Rail Tavern**, 664 A.2d 525, 531–32 (Pa. 1995) (holding that, because county coroner formed opinions as to time of death and cause of death in the performance of his official duties, these opinions "were not acquired or developed with an eye toward litigation, [and so] Rule 4003.5 is inapplicable[.]"); **see also Ziegler v. Easton Suburban Water Auth.**, 43 A.3d 553, 558 (Pa. Cmwlth. 2012) (same): **Jahanshahi v. Centura Dev. Co., Inc.**, 816 A.2d 1179 (Pa. Super. 2003) (same).

---

[7] The statutory confidentiality provisions invoked by ETC would seem to, at most, bar government agencies from disclosing the reports to third parties. **See e.g.**, 35 P.S. § 2141.5(a) (precluding an agency from disclosing "a public utility record or portion thereof which contains confidential security information[.]").  However, these confidentiality provisions do not speak to whether the reports must then be treated as work product as ETC suggests. Although there appear to be no cases directly on point as to this question, we note that ETC's interpretation of 35 P.S. § 2141.5(a) is somewhat inconsistent with the statute's stated purpose, which is to limit public disclosure of sensitive "security information."  ETC has not specified what sensitive information would be revealed by the discovery of the reports.  In any event, the pipeline in this case has *already exploded*, so it is unclear how affording ETC an advantageous privilege in a private contract dispute would implicate the public security interests advanced by the statute.

In affirming the trial court's discovery order on the ground that ETC's reports are not privileged, it is not necessary for this Court to resolve the remaining waiver issues argued by the parties on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/16/2023